UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
DELUX PUBLIC CHARTER, LLC :
d/b/a JSX AIR and JETSUITE, INC.; :
XO GLOBAL, LLC; and BLADE :
URBAN AIR MOBILITY, INC., :
: 22-CV-1930 (PMH)
            **Plaintiffs,** :
:
  -against- :
:
COUNTY OF WESTCHESTER, :
:
            **Defendant.** :
------------------------------------------------------x


# MEMORANDUM OF LAW IN OPPOSITION
# TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
# AND IN SUPPORT OF ABSTENTION

**TABLE OF CONTENTS**

Table of Authorities ……………………………………………………………………………….i

PRELIMINARY STATEMENT ……………………………………………………………………1

FACTUAL AND PRODECURAL BACKGROUND ………………………………………………2

ARGUMENT ……………………………………………………………………………………..4

I.        Standards of Review and Burdens of Proof …………………………………………….4

        A.        Preliminary Injunctions ……………………………………………………...4

        B.        Abstention …………………………………………………………………...5

II.       The Court should deny Plaintiffs' preliminary injunction motion. ………………………...6

        A.        Westchester's stipulation obviates the need for a preliminary injunction. ………...6

        B.        A preliminary injunction is unwarranted because it would not serve the
                  public interest and because Plaintiffs are in no danger of irreparable harm. ………7

III.      The Court should exercise its discretion to abstain in favor of the first-filed,
       substantially similar pending state action. …………………………………………...9

        A.        *Wilton* is the correct standard for this declaratory judgment action. ….…………9

        B.        The *Wilton* factors weigh in favor of abstention. …………………………………10

        C.        Even if the Court determines that *Wilton* does not apply, the *Colorado River*
                  factors also weigh in favor of abstention. …………………………......…………...12

        D.        Dismissal of the instant action is appropriate, should the Court find
                  that abstention is appropriate. ……………………………….......……………...15

CONCLUSION …………………………………………………………………………….16

# **TABLE OF AUTHORITIES**

*Abe v. N.Y. Univ.*, No. 14-cv-9323 (RJS), 2016 U.S. Dist. LEXIS 43611
 (S.D.N.Y. Mar. 30, 2016) ………………………………………………………….13, 15, 16

*Argonaut Ins. Co. v. 354 Chauncey Realty LLC*, No. 20-cv-00154 (DLI), 2021 U.S. Dist.
 LEXIS 66119 (E.D.N.Y. Mar. 31, 2021) ……………………………………………11, 15

*Aventura Techs., Inc. v. World of Residensea II Ltd.*, 646 F. App'x 92 (2d Cir. 2016) ………….6

*Bright Kids NYC, Inc. v. QuarterSpot, Inc.*, No. 20-cv-9172 (MKV), 2021 U.S. Dist. LEXIS
 178867 (S.D.N.Y. Sep. 20, 2021) ……………………………………………………….11

*Cadle Co. v. Bankers Fed. Sav. FSB*, 929 F. Supp. 636 (E.D.N.Y. 1996) ………………….....12

*Chateau Hip v. Gilhuly*, No. 95-cv-10320 (JGK), 1996 U.S. Dist. LEXIS 11055
 (S.D.N.Y. Aug. 1, 1996) ………………………………………………………………….7

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)……..……*passim*

*Demirayak v. City of N.Y.*, 746 F. App'x 49 (2d Cir. 2018) ……………………………………...4

*Dore v. Wormley*, 690 F. Supp. 2d 176 (S.D.N.Y. 2010) ………………………………………15

*Dzhabrailov v. Decker*, No. 20-cv-3118 (PMH), 2020 U.S. Dist. LEXIS 91892
 (S.D.N.Y. May 26, 2020) ………………………………………………………….4, 6, 8

*EMS Indus. Corp. v. Acciai Speciali Terni, USA Inc.*, No. 99-cv-9050 (RWS),
 2000 U.S. Dist. LEXIS 762 (S.D.N.Y. Jan. 26, 2000) …………………………………..13

*Exxon Mobil Corp. v. Healey*, No. 18-1170, 2022 U.S. App. LEXIS 6588
 (2d Cir. Mar. 15, 2022) …………………………………………………………………...7

*Free Speech v. Reno*, 200 F.3d 63 (2d Cir. 1999) ………………………………………………8

*Gillette v. Cty. of Warren*, No. 14-cv-560 (MAD/TWD), 2015 U.S. Dist. LEXIS 46805
 (N.D.N.Y. Apr. 10, 2015) ……………………………………………………………14-15

*IBM v. De Freitas Lima*, No. 20-cv-04573 (PMH), 2020 U.S. Dist. LEXIS 161532
 (S.D.N.Y. Sep. 3, 2020) ………………………………………………………………..4

*ICBC Standard Sec., Inc. v. Luzuriaga*, 217 F. Supp. 3d 733 (S.D.N.Y. 2016) ……………....15

*Kanciper v. Suffolk Cty. SPCA, Inc.*, 722 F.3d 88 (2d Cir. 2013) ………………………………9

*Managing Directors' Long Term Incentive Plan v. Boccella*, No. 14-cv-7033 (PAC),

2015 U.S. Dist. LEXIS 59432 (S.D.N.Y. May 5, 2015) …………………………………..11-12

*Mazlin Trading Corp. v. Wj Holding*, No. 19-cv-7652 (LTS), 2021 U.S. Dist. LEXIS 58331
   (S.D.N.Y. Mar. 26, 2021) …………………………………………………………………….14

*Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17 (2d Cir. 1997) …………………………………..5

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84
   (2d Cir. 2012) ……………………………………………………………………...….5, 9

*Port Auth. of N.Y. & N.J. v. Kraft Power Corp.*, No. 11-cv-5624 (HB), 2012 U.S. Dist. LEXIS
   33876 (S.D.N.Y. Mar. 13, 2012) …………………………………………………………..6, 10

*Soros Fund Mgmt. LLC v. Tradewinds Holdings, Inc.*, No. 17-cv-3187 (JFK), 2018 U.S. Dist.
   LEXIS 40164 (S.D.N.Y. Mar. 12, 2018) ……………………………………………………10, 15

*Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505 (S.D.N.Y. 2018) ……………………12

*Vill. of Westfield v. Welch's*, 170 F.3d 116 (2d Cir. 1999) ……………………………….……..9

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)…………………………….…….…………*passim*

*Woodford v. Cmty. Action Agency of Greene Cty.*, 239 F.3d 517 (2d Cir. 2001) ……..……5, 15

*XL Ins. Am., Inc. v. DiamondRock Hosp. Co.*, 414 F. Supp. 3d 605 (S.D.N.Y. 2019) …….……..5


42 U.S.C. § 1983 ………………………………………………………………………………..2

LAWS OF WESTCHESTER COUNTY § 712.462 ……………………………….…………….*passim*

**PRELIMINARY STATEMENT**

Pursuant to the Court's March 11, 2022 order (Dkt. No. 34), Defendant the County of Westchester ("Westchester" or "the County") respectfully submits this memorandum of law in opposition to Plaintiffs' preliminary injunction motion, and in support of abstention.

Any need for a preliminary injunction was obviated by the so-ordering of Westchester's stipulation that it would not enforce the local law in question (or the policy implementing said local law) without a valid court order. This was essentially the very relief Plaintiffs sought via the instant motion; the only "imminent harm" they now face is the prospect of an adverse court ruling.

Regarding abstention, the Court should exercise its discretion to abstain from this action in favor of the substantially similar, first-filed action pending in New York State Supreme Court. Both actions are declaratory in nature, which puts the abstention analysis squarely within the framework of *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); the factors set forth in that case and its progeny weigh heavily in favor of abstention.

Even if the Court applies the stricter abstention framework set forth in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), abstention would still be appropriate. The New York State Supreme Court and the Hon. Lewis J. Lubell, J.S.C. are capable of adjudicating whether the local law in question is preempted by federal regulation; they are equally capable of adjudicating any counterclaims that Plaintiffs may assert, including an Equal Protection claim. Abstention in the federal action would end the ongoing "piecemeal litigation," which was brought about solely, and as a direct result of, Plaintiffs' reactive filings.

For these reasons, and the additional reasons set forth in greater detail below, abstention is appropriate at bar, and dismissal of the instant federal action is warranted.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 7, 2022, Westchester initiated an action in New York State Supreme Court, Index No. 57179/2022. (*See generally* Dkt. No. 21-1 (Westchester complaint).) The defendants to that action (the "state action") are Blade Urban Air Mobility, Inc., JetSuiteX, Inc., XO Global LLC, Delux Public Charter, LLC, and Contour Aviation. The state action seeks a declaration that the defendants' operations at the Westchester County Airport (the "Airport") are subject to local law. (*See id.*) Specifically, the County seeks to enforce its Terminal Use Procedures ("TUPs"), as codified in Section 712.462 of the Laws of Westchester County ("LWC," *available at*: https://library.municode.com/ny/westchester_county/codes/code_of_ordinances), and as proposed to be implemented via a policy promulgated on January 21, 2022 ("Policy No. 1").

Simultaneously with the filing of its summons and complaint, Westchester moved for a preliminary injunction. That same day, Judge Lubell signed Westchester's proposed Order to Show Cause, directing the defendants to file any responsive papers by April 5, 2022, and setting a hearing on Westchester's motion for April 8, 2022. (Dkt. No. 21-2.) Westchester e-mailed courtesy copies of its summons, complaint, and Judge Lubell's order to defendants' counsel at 7:22 PM on March 7th.

Approximately three hours later, Plaintiffs (which encompass all of the state action defendants except for Contour Aviation) filed their complaint in this federal action. (Dkt. No. 1.) Plaintiffs' complaint asserts three causes of action, each requesting declaratory and injunctive relief. (*See id.* at 29, 31, 33.) The first two causes of action assert that the TUPs are preempted by federal law. (*See id.* at 29, 31.) The third cause of action asserts an Equal Protection violation under 42 U.S.C. § 1983. (*Id.* at 33.) The declaratory relief that Plaintiffs seek is the exact opposite of that sought by Westchester in its state action: Plaintiffs seek an order declaring

2

that Westchester "cannot prohibit [their] operations through local law, regulation, or other provision having the force of law." (*Id.* at 31, 33; *see also id.* at 35 (seeking "judgment declaring that … Policy No. 1 is unconstitutional").)

On March 9, 2022, Plaintiffs requested a temporary restraining order and pre-motion conference for their proposed preliminary injunction motion. (Dkt. No. 14.) The Court held the conference by telephone on March 11, 2022; the transcript (hereafter "Tr.") is attached hereto as Exhibit 'A' to the Declaration of David H. Chen. Following this conference, the Court denied Plaintiffs' request for a temporary restraining order and directed Plaintiffs to inform the Court as to whether they would withdraw their preliminary injunction motion in light of Westchester's forthcoming stipulation. (Dkt. No. 34.) This stipulation states, in relevant part, that:

> neither Westchester nor any of its agents will seek to or take any action to enforce Policy No. 1 and/or section 712.462 of the Laws of Westchester County (the 'TUP') against Plaintiffs and their Air Carriers without a valid court order;
> Westchester will not demand, request or otherwise encourage any of the FBOs--specifically, White Plains Aviation Partners, LLC, d/b/a Million Air White Plains ('Million Air'); HPN NY Holdings, LLC d/b/a Ross Aviation ('Ross Aviation'); and Signature Flight Support Corporation, Inc. ('Signature')--at the Westchester County Airport, to seek to enforce the TUP and/or Policy No. 1 against Plaintiffs without a valid court order;
> Westchester will provide a copy of this stipulation to the FBOs once it is so-ordered by the Court; and
> Westchester will inform the Westchester Agents of this Stipulation and will ensure the Westchester Agents' compliance with this Stipulation.

(Dkt. No. 45 (so-ordered stipulation).) Westchester has provided a copy of the so-ordered stipulation to Avports, the company that operates the Airport on Westchester's behalf, and Avports has in turn provided copies of the so-ordered stipulation to the relevant FBOs (Fixed Base Operators) at the Airport, pursuant to the stipulation. (*See* Decl. of David H. Chen.)

Notwithstanding this stipulation, on March 16, 2022, Plaintiffs informed the Court "that they believe a preliminary injunction is still necessary and therefore cannot withdraw their

3

application for a preliminary injunction." (Dkt. No. 44.) That same day, Plaintiffs moved to stay the state action pursuant to CPLR § 2201, pending resolution of the instant, federal action. Judge Lubell scheduled a hearing on this requested stay simultaneously with the previously scheduled April 8th hearing on Westchester's preliminary injunction motion. (*See* NYSCEF Doc. No. 38.)

Service in both the state and federal actions has been effectuated.

## ARGUMENT

### I. Standards of Review and Burdens of Proof

#### A. Preliminary Injunctions

"A party seeking a preliminary injunction must ordinarily establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Demirayak v. City of N.Y.*, 746 F. App'x 49, 51 (2d Cir. 2018) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)); *see also IBM v. De Freitas Lima*, No. 20-cv-04573 (PMH), 2020 U.S. Dist. LEXIS 161532, at *16 (S.D.N.Y. Sep. 3, 2020) ("balance of hardships" must tip "decidedly in the movant's favor").

Where the movant seeks a preliminary injunction that "would provide the ultimate relief sought in the underlying action," however, the standard is "heightened," and the movant "must make a clear showing that he is entitled to the relief requested, or that 'extreme or very serious damage' will result from denial of preliminary relief." *Demirayak*, 746 F. App'x at 51 (citations omitted); *see also Dzhabrailov v. Decker*, No. 20-cv-3118 (PMH), 2020 U.S. Dist. LEXIS 91892, at *14 (S.D.N.Y. May 26, 2020) ("Under this heightened preliminary injunction standard, the movant must show a clear or substantial likelihood of success on the merits, and make a strong showing of irreparable harm in addition to showing that the preliminary injunction is in

the public interest") (citations and internal quotation marks omitted).

### B.    Abstention

The Second Circuit recognizes two avenues by which a district court may abstain from hearing a claim over which it otherwise has jurisdiction. *See Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 20 (2d Cir. 1997). The party seeking abstention bears the burden either way.

Under the stricter, "exceptional circumstances" standard established by *Colorado River*, 424 U.S. 800, a district court considers:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cty.*, 239 F.3d 517, 522 (2d Cir. 2001) (citations omitted). Under the more "lenient" standard for declaratory judgment actions, established by *Wilton*, 515 U.S. 277 and its progeny, a district court instead considers:

> (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgment would finalize the controversy and offer relief from uncertainty; … (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy.

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012) (citations and internal quotation marks omitted); *see also XL Ins. Am., Inc. v. DiamondRock Hosp. Co.*, 414 F. Supp. 3d 605, 610 (S.D.N.Y. 2019) (courts in this district have also considered factors such as: "the scope of the pending state proceeding and the nature of the defenses available there; whether the claims of all parties in interest can satisfactorily be

adjudicated in that proceeding; whether the necessary parties have been joined; and whether such parties are amenable to process in that proceeding").

A district court has discretion in applying *Colorado River*, but this discretion "must be exercised within the narrow and specific limits prescribed." *Aventura Techs., Inc. v. World of Residensea II Ltd.*, 646 F. App'x 92, 94 (2d Cir. 2016) (citations and internal quotation marks omitted). In contrast, a district court has "considerable discretion" in applying *Wilton*. *See Port Auth. of N.Y. & N.J. v. Kraft Power Corp.*, No. 11-cv-5624 (HB), 2012 U.S. Dist. LEXIS 33876, at *5-6 (S.D.N.Y. Mar. 13, 2012). Under either standard, if the court determines that abstention is warranted, it may stay or dismiss the claims. *See id.*

## II.  The Court should deny Plaintiffs' preliminary injunction motion.

### A.  Westchester's stipulation obviates the need for a preliminary injunction.

Plaintiffs' preliminary injunction motion requests an order enjoining Westchester "from enforcing Policy No. 1 and the TUP." (Dkt. No. 15, at 11.) It is undisputed that this is the same ultimate relief sought by their underlying complaint. (*Compare id. with* Dkt. No. 1, at 36 (seeking order enjoining Westchester from "enforcing Policy No. 1 [or] Section 712.462 of the Westchester County Municipal Code, the TUP"); *see also* Tr. 32:7-13.) Accordingly, Plaintiffs are subject to a "heightened preliminary injunction standard;" they must show "a clear or substantial likelihood of success on the merits, and make a strong showing of irreparable harm in addition to showing that the preliminary injunction is in the public interest." *Dzhabrailov*, 2020 U.S. Dist. LEXIS 91892, at *14 (citations and internal quotation marks omitted).

Plaintiffs cannot meet this heightened standard. Westchester has memorialized, via a so-ordered stipulation (Dkt. No. 45), its prior representations (*see* Dkt. Nos. 21, 29; Tr. 6:16-7:5) to take no action against Plaintiffs at the Airport without a valid court order. In other words, the

only "irreparable harm" Plaintiffs face now is the prospect of an adverse court ruling. The Court need look no further—via its stipulation, Westchester has already given Plaintiffs the preliminary relief they seek. *See Exxon Mobil Corp. v. Healey*, No. 18-1170, 2022 U.S. App. LEXIS 6588, at *23 (2d Cir. Mar. 15, 2022); *Chateau Hip v. Gilhuly*, No. 95-cv-10320 (JGK), 1996 U.S. Dist. LEXIS 11055, at *7 (S.D.N.Y. Aug. 1, 1996). Plaintiffs' arguments about "likelihood of success on the merits" may be presented to Judge Lubell in opposition to Westchester's own preliminary injunction motion.

> **B.    A preliminary injunction is unwarranted because it would not serve the public interest and because Plaintiffs are in no danger of irreparable harm.**

To the extent the Court reaches them, Plaintiffs' preliminary injunction arguments fail of their own accord. They first argue that "irreparable harm is actual and imminent" because the TUPs prevent Plaintiffs from operating at HPN, *i.e.*, the Westchester County Airport. (Dkt. No. 15, at 12.) But Plaintiffs have operated at the County's airport, notwithstanding the TUPs, for months now—which is of course the basis for ***Westchester's*** first-filed preliminary injunction motion in the state action.

Moreover, nothing in the TUPs would cause "irreparable harm" even if Plaintiffs complied with them. The TUPs only require that aircraft with more than nine passenger seats, individual tickets for which are publicly sold, operate out of the Airport terminal. *See* LWC § 712.462. Policy No. 1 further limits the scope of the TUPs (and memorializes a significant County concession to Plaintiffs) by exempting arriving flights from that requirement.[1] The fact that Plaintiffs (specifically, Delux Public Charter, d/b/a JSX Air) are now partnering at HPN with a traditional commercial airline (jetBlue, *see* Chen Decl., Exhibit 'C') that has always operated

---

[1] Policy No. 1 is referenced in, but not included with, Plaintiffs' complaint (*see generally* Dkt. No. 1); it is accordingly attached hereto as Exhibit 'B' to the Declaration of David H. Chen.

7

out of the Airport terminal is compelling evidence that Plaintiffs may comply with the TUPs without sustaining "irreparable harm."

Plaintiffs next argue that Westchester would not be "prejudiced" if they continue to operate from FBOs pending final adjudication (Dkt. No. 15, at 14), but this assertion, even if it were true, is irrelevant—Plaintiffs must make a "strong showing" that *they* will suffer irreparable harm, not that Westchester *wouldn't*. *Dzhabrailov*, 2020 U.S. Dist. LEXIS 91892, at *14. In any event, a governmental entity can show "irreparable harm" simply by establishing a violation of its laws and regulations; *see Free Speech v. Reno*, 200 F.3d 63, 65 (2d Cir. 1999); Plaintiffs do not (because they cannot) contest the fact that they are currently in violation of the TUPs.

Finally, Plaintiffs argue that "an injunction is in the public interest because [they] can continue services they were already providing to their customers (and in some cases are paid already) and will ensure public access to Plaintiffs' routes and services." (Dkt. No. 15, at 24.) This argument deserves short shrift; Plaintiffs are providing those services *now* (in defiance of the TUPs), and per the so-ordered stipulation, Westchester cannot prevent them from doing so absent a valid court order. And even if Westchester were to obtain such an order, it simply does not follow that the public would lose "access to Plaintiffs' routes and services." (*Id.*) As noted above, there are multiple ways in which Plaintiffs can both comply with County law and continue to service those same routes. Indeed, Policy No. 1 offers an example of how Plaintiffs may come into compliance with County law while maintaining "security compliance, excellent customer experience (indoors, no multi-modal transportation, no waiting among crowds), and an overall safe operation." (Chen Decl., Ex. B at 2.) Westchester is and always has been open to other, alternate proposals, but Plaintiffs cannot continue to act as though they are exempt from a duly-enacted local law that has been honored for years by other airlines.

**III.     The Court should exercise its discretion to abstain in favor of the first-filed, substantially similar pending state action.**

As an initial matter, the parties do not dispute that the federal and state actions are "parallel" for purposes of abstention. They dispute which abstention framework should apply, and whether the various factors weigh for or against abstention. (*See* Dkt. Nos. 29, 31.)

**A.     *Wilton* is the correct standard for this declaratory judgment action.**

There is little question that Plaintiffs' action is one for declaratory relief. The complaint itself is captioned, "Complaint for Declaratory and Injunctive Relief and Demand for Jury Trial." (Dkt. No. 1, at 1.) It notes, in the Preliminary Statement, that "Plaintiffs seek declaratory and permanent injunctive relief" (*id.* at ¶ 10), and invokes the jurisdiction of the federal declaratory judgment statute. (*Id.* at ¶ 13.) The very first request under the "Prayer for Relief" is for a declaratory judgment. (*Id.* at 36.)

Citing *Niagara Mohawk Power Corp.*, 673 F.3d 84, Plaintiffs argue that *Wilton* is inapplicable because they "seek injunctive relief in addition to declaratory relief." (Dkt. No. 31, at 2.) This reliance is misplaced. In *Niagara Mohawk*, the Second Circuit's decision to apply *Colorado River* rather than *Wilton* turned on the fact that the plaintiff sought, in addition to a declaratory judgment, "a ***damages*** award of $5 million." 673 F.3d at 106 n.7 (emphasis added); *see also Vill. of Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999) (*Wilton* inapplicable because parties sought monetary damages from each other). And following *Niagara Mohawk*, the Second Circuit clarified that "*Wilton* abstention cannot apply when … a plaintiff seeks ***damages*** in addition to declaratory relief." *Kanciper v. Suffolk Cty. SPCA, Inc.*, 722 F.3d 88, 89 (2d Cir. 2013) (emphasis added). None of Plaintiffs' three causes of action seek damages (*see* Dkt. No. 1 at 29, 31, 33), and Westchester seeks no damages in the state action. (Dkt. No. 21-1.)

Plaintiffs do seek injunctive relief, but that does not make *Wilton* inapplicable—

9

particularly if the Court denies Plaintiffs' pending motion for a preliminary injunction.  *See Soros Fund Mgmt. LLC v. Tradewinds Holdings, Inc.*, No. 17-cv-3187 (JFK), 2018 U.S. Dist. LEXIS 40164, at *15 (S.D.N.Y. Mar. 12, 2018) (applying *Wilton* because "[t]he complaint made no demand for damages and the Court has denied [plaintiff]'s requested injunctive relief").  And Plaintiffs' request for a permanent injunction is inexorably intertwined with the requested declaratory relief (*see* Dkt. No. 1, at ¶¶ 10, 13, 115, 134, 148-49), which weighs in favor of applying *Wilton*.  *See Port Auth. of N.Y. & N.J. v. Kraft Power Corp.*, No. 11-cv-5624 (HB), 2012 U.S. Dist. LEXIS 33876, at *9 (S.D.N.Y. Mar. 13, 2012) ("it is unclear what would be left in the suit were I to try to selectively apply *Brillhart/Wilton* to only the declaratory claims").

Indeed, under Plaintiffs' view of the law, *Wilton* would become a nullity, because any party seeking declaratory relief could simply add a request for a permanent injunction enforcing said declaratory relief in order to make *Wilton* inapplicable.  A decision of the Supreme Court of the United States is not so easily sidestepped.

### B.     The *Wilton* factors weigh in favor of abstention.

Regarding the first *Wilton* factor, Plaintiffs argue that "[t]his action addresses federal issues, such as Equal Protection, not in the state action and will settle the legal issues presented by Policy No. 1/the TUPs."  (Dkt. No. 31, at 2.)  But the state action can also "settle the legal issues presented by Policy No. 1/the TUPs," to include the federal preemption issue, which Westchester itself flagged for the state court in its complaint.  (*See* Dkt. No. 21-1, at ¶¶ 51-56 (identifying federal laws and regulations raised by airlines in correspondence).)  Indeed, as this Court noted, preemption is "primarily a defense" that Plaintiffs can assert in the state action; they are similarly free to assert the Equal Protection claim as a counterclaim in the state action.  (*See* Tr. 10:22-11:6.)  Even the Equal Protection claim is better understood as a defense to the state

action, as that claim is not cognizable if the TUPs do not apply to Plaintiffs. In other words, the state action can settle all of the claims at issue—and "a declaratory judgment has 'no useful purpose' when another proceeding will settle the claims at issue." *Bright Kids NYC, Inc. v. QuarterSpot, Inc.*, No. 20-cv-9172 (MKV), 2021 U.S. Dist. LEXIS 178867, at *13 (S.D.N.Y. Sep. 20, 2021) (citation omitted).

As to the second factor, Plaintiffs argue that "a decision on whether Policy No. 1/TUP is preempted will finalize the controversy as to all affected parties and will effectively bind every air carrier." (Dkt. No. 31, at 2.) That is incorrect, because the state action includes a defendant (Contour Aviation) that is not a party to the instant, federal action. Because Contour would accordingly not have had a full and fair opportunity to litigate this action, any ruling by the Court would not have preclusive effect upon Contour in the state action. *See Argonaut Ins. Co. v. 354 Chauncey Realty LLC*, No. 20-cv-00154 (DLI)(CLP), 2021 U.S. Dist. LEXIS 66119, at *9 (E.D.N.Y. Mar. 31, 2021) ("While the instant action is between only Argonaut and Chauncey, the State Action involves Brownstone and Harlem United as well. Accordingly, a ruling here would not bind all the parties in the State Action.").

Regarding the third *Wilton* factor, Plaintiffs argue that "[t]here is simply no evidence that [they] are improperly racing to res judicata." (Dkt. No. 31, at 2.) The timing of Plaintiffs' complaint—filed less than two hours before midnight on the same day as Westchester's earlier-filed complaint—suggests otherwise, as does the fact that Plaintiffs moved for a TRO in the instant action (Dkt. No. 14), and are actively seeking to stay the state action. (*See* NYSCEF Doc. Nos. 27-37.) As another court in this district held, "[t]he 'reactive' nature of Plaintiff's suit, and the appearance of forum-shopping demonstrated by Plaintiff's litigation strategy, weighs heavily in favor of abstention." *Managing Directors' Long Term Incentive Plan v. Boccella*, No. 14-cv-

11

7033 (PAC), 2015 U.S. Dist. LEXIS 59432, at *16 (S.D.N.Y. May 5, 2015). To be clear, Westchester does not suggest that Plaintiffs drafted their federal complaint in a matter of hours. The time afforded by Westchester's courtesy copy was certainly sufficient, however, for Plaintiffs to add the Equal Protection claim upon which their anti-abstention argument relies.

Plaintiffs argue, as to the fourth factor, that the instant action "will not cause friction with the state court because no state law issues are being decided." (Dkt. No. 31, at 2.) But both actions revolve around the question of whether Section 712.462 of the Laws of Westchester County applies to Plaintiffs—a quintessential state law issue. A great deal of friction would ensue if the state and federal courts ruled differently on this issue. As one district court noted, "[d]eclaratory judgment actions which have as their underlying basis rights that are essentially governed by state law present particularly appropriate cases for application of the abstention doctrine." *Cadle Co. v. Bankers Fed. Sav. FSB*, 929 F. Supp. 636, 639 (E.D.N.Y. 1996).

Finally, regarding the fifth factor, Plaintiffs assert that the County "seeks a more limited remedy excluding [the] Equal Protection claims." (Dkt. No. 31, at 2.) Again, however, Plaintiffs may assert Equal Protection as a counterclaim in the state action—a far better remedy than litigating a parallel proceeding in federal court. *See Stoncor Grp., Inc. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 518 (S.D.N.Y. 2018) ("even if no inconsistent or contradictory findings are rendered on these issues, this court still has an interest in avoiding duplicative proceedings, which is served by allowing the state court to resolve these issues").

> C. **Even if the Court determines that *Wilton* does not apply, the *Colorado River* factors also weigh in favor of abstention.**

The *Colorado River* factors also weigh in favor of abstention, to the extent the Court applies the stricter standard. "Notably, no one factor is necessarily determinative," and "the weight to be given to any one factor may vary greatly from case to case, depending on the

12

particular setting of the case." *EMS Indus. Corp. v. Acciai Speciali Terni, USA Inc.*, No. 99-cv-9050 (RWS), 2000 U.S. Dist. LEXIS 762, at *5 (S.D.N.Y. Jan. 26, 2000) (citations and internal quotation marks omitted).  Here, the first two factors are, as in *EMS Indus. Corp.*, "irrelevant to this inquiry," as "[t]here is no *res* over which either this Court or the state court has assumed jurisdiction[,] [n]or is the federal forum more inconvenient than the state forum." *Id.* at *6.

"By far the most important factor driving *Colorado River* and its progeny is the clear federal policy of avoiding piecemeal adjudication." *Abe v. N.Y. Univ.*, No. 14-cv-9323 (RJS), 2016 U.S. Dist. LEXIS 43611, at *20 (S.D.N.Y. Mar. 30, 2016) (citations and internal quotation marks and brackets omitted).  This third *Colorado River* factor weighs heavily in favor of abstention, because "piecemeal litigation" is precisely what is occurring now due to the later-filed federal action.  Plaintiffs argue that abstention would not solve this problem because the state action "does not address all of the issues in this action." (Dkt. No. 31, at 3.)  As previously noted, however, Plaintiffs can assert their Equal Protection claim as a counterclaim in the state action—a fact that other courts have found decisive.  *See EMS Indus. Corp.*, 2000 U.S. Dist. LEXIS 762, at *6 ("The relief EMS seeks in the instant action can be asserted as counterclaims in the State Action.").  Moreover, because the state action includes a party (Contour Aviation) that is not a party to the federal action:

> any judgment by this Court — in favor of either Plaintiff or Defendant — would not have *any* preclusive effect on [that] defendant[] in the State Action, wh[ich] ha[s] not had the opportunity to litigate in this forum. Thus, if the Federal Action proceeds and somehow resolves itself before the State Action, there is potential for precisely the sort of piecemeal litigation *Colorado River* abstention is designed to avoid.  In other words, while there is the possibility that a state-court judgment could preclude claims brought in the federal forum, the reverse is not true. Accordingly, because of the potential for inconsistent and mutually contradictory determinations absent abstention, the third factor weighs heavily in favor of abstention.

*Abe*, 2016 U.S. Dist. LEXIS 43611, at *22 (citations and internal quotation marks omitted).

The fourth *Colorado River* factor "calls for the Court's consideration of the order in which the parallel actions were filed, and whether one action is more advanced than another. Abstention is favored where … the relevant state court action[] w[as] filed first and [is] further along than the federal action." *Mazlin Trading Corp. v. Wj Holding*, No. 19-cv-7652 (LTS), 2021 U.S. Dist. LEXIS 58331, at *16 (S.D.N.Y. Mar. 26, 2021) (citation and internal quotation marks omitted).  Plaintiffs argue that "both actions were filed on the same day" (Dkt. No. 31, at 3)—omitting the fact that the state action was filed first.  Moreover, Westchester respectfully suggests that the timing of Plaintiffs' suit was not coincidental, and that Plaintiffs accelerated the filing of their federal complaint precisely in order to argue that "both actions were filed on the same day."  Plaintiffs' argument that the federal action is "more advanced" because the Court has already held a hearing on their TRO request (*id.*) should be rejected for similar reasons—it is likely that Plaintiffs only requested the TRO in the first place so as to subsequently argue this very point.  In any event, the parties have a hearing before Judge Lubell on Westchester's preliminary injunction motion and Plaintiffs' motion to stay the state action on April 8, 2022; the instant briefing is not even scheduled to be complete by that date.  (*See* Dkt. No. 34 (setting Plaintiffs' reply deadline for April 11, 2022).)

Plaintiffs argue that the fifth *Colorado River* factor weighs in their favor because "federal law provides the rule of decision."  (Dkt. No. 31, at 3.)  This is only true with respect to the preemption question, which is, again, "primarily a defense" that Plaintiffs can assert in the state action.  (*See* Tr. 10:22-11:6.)  The ultimate issue remains one of state law—whether Plaintiffs are bound by Section 712.462 of the Laws of Westchester County.  Regardless, because any final resolution "would require application of both federal and state law," this fifth factor is "neutral." *Gillette v. Cty. of Warren*, No. 14-cv-560 (MAD/TWD), 2015 U.S. Dist. LEXIS 46805, at *18

(N.D.N.Y. Apr. 10, 2015).

The sixth and final *Colorado River* factor is "whether the state procedures are adequate to protect the plaintiff's federal rights." *Woodford*, 239 F.3d at 522. Plaintiffs have already conceded that they are. (*See* Tr. 11:24-12:1.) Indeed, Plaintiffs have now filed a motion to stay the state action (*see* NYSCEF Doc. No. 36) that "bear[s] a strong resemblance" to their federal complaint regarding the preemption argument. *Dore v. Wormley*, 690 F. Supp. 2d 176, 193 (S.D.N.Y. 2010). "Thus, there is no reason to conclude that the New York court cannot adequately protect Plaintiff's rights, and therefore, this factor weighs in favor of abstention." *Id*. Plaintiffs' preference for federal court is simply that—a preference.

> **D.    Dismissal of the instant action is appropriate, should the Court find that abstention is appropriate.**

Should the Court find that abstention is appropriate at bar, the question would then turn to the proper remedy; "the *Colorado River* exceptional circumstances test makes no distinction as to whether a dismissal or stay is more appropriate." *Abe*, 2016 U.S. Dist. LEXIS 43611, at *31 (citations omitted). "[W]here 'the entirety of a plaintiff's claim in a declaratory action constitutes a defense in a pending state proceeding,' courts in the Second Circuit have found that dismissal, rather than a stay, is appropriate." *Argonaut Ins. Co.*, 2021 U.S. Dist. LEXIS 66119, at *13 (quoting *Soros Fund Mgmt. LLC*, 2018 U.S. Dist. LEXIS 40164, at *17); *see also ICBC Standard Sec., Inc. v. Luzuriaga*, 217 F. Supp. 3d 733, 741 (S.D.N.Y. 2016). That is precisely the situation at bar—the entirety of Plaintiffs' federal complaint, to include the Equal Protection claim, could be pled as a defense to Westchester's pending, first-filed state action.

Plaintiffs argue that the "minimal difference in time between the filing of the two actions" weighs against dismissal (Dkt. No. 31, at 4), noting that they "could not [have] draft[ed] such a detailed complaint, complete with exhibits and supporting papers, three hours after

15

receiving notice" of the state action. Again, Westchester does not suggest that the ***entire*** federal complaint was drafted in three hours. Westchester ***does*** suggest, however, that Plaintiffs could have added the Equal Protection claim to their federal complaint in that time frame, with abstention in mind. *Cf. Abe v. N.Y. Univ.*, 2016 U.S. Dist. LEXIS 43611, at *31 ("Plaintiff's eleventh-hour addition of his ERISA claim suggests that he added this cause of action merely to stave off abstention"). This cuts sharply in favor of outright dismissal. *See id.*

## CONCLUSION

For the foregoing reasons, Westchester respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction, and further requests that the Court exercise its discretion to abstain from this action in favor of the state action.

Should the Court decline Westchester's abstention request, Westchester respectfully requests, in the alternative, a 20-day extension of its time to answer Plaintiffs' complaint.

Dated: March 30, 2022  
       White Plains, New York

JOHN M. NONNA,  
COUNTY ATTORNEY  
*Counsel for Defendant*

by: /s/ ***David H. Chen***  
David H. Chen, Esq.  
Deputy County Attorney  
148 Martine Avenue, Suite 600  
White Plains, New York 10601  
(914) 995-3616  
dhca@westchestergov.com

16