UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DELUX PUBLIC CHARTER, LLC d/b/a JSX
AIR, et al.,

                              Plaintiffs,

        -against-

COUNTY OF WESTCHESTER, NEW YORK,
a charter county,

                              Defendant.

**MEMORANDUM OPINION
AND ORDER**

22-CV-01930 (PMH)

PHILIP M. HALPERN, United States District Judge:

Delux Public Charter, LLC d/b/a JSX Air ("Delux"), JetSuiteX, Inc. ("JetSuiteX"), XO

Global, LLC ("XO Global"), and Blade Urban Air Mobility, Inc. ("Blade," and collectively,

"Plaintiffs") are federally authorized direct and/or indirect air carriers that provide flight services

at the Westchester County Airport ("HPN"). Plaintiffs commenced this action against the County

of Westchester ("Defendant") on March 7, 2022. (Doc. 1, "Compl.").[1] Plaintiffs assert claims of

federal preemption and deprivation of equal protection, seeking relief in the form of money

damages, declaratory judgment, and an injunction. (*See id*.).

Before the Court is Plaintiffs' motion for a preliminary injunction which seeks to prevent

Defendant from enforcing certain laws and policies against Plaintiffs in connection with their

operations at HPN. (Doc. 35; Docs. 14-19). Separately pending before the Court is Defendant's

request that the Court abstain from exercising jurisdiction in this case in favor of an action

presently pending in Supreme Court of the State of New York, County of Westchester, under

---

[1] Plaintiffs also originally named AvPorts, LLC, a private company that provides certain services on behalf
of HPN, and April Gasparri, HPN's Airport Manager as defendants. On March 16, 2022, the Court endorsed
a stipulation whereby, *inter alia*, Plaintiffs dismissed without prejudice Ms. Gasparri and AvPorts, LLC
from this action. (Doc. 51).

Index. No. 57179/2022 (the "State Court Action"). (Docs. 52-53). The Court addresses both applications herein.

For the reasons set forth below, both the motion for a preliminary injunction and the request to abstain in favor of the State Court Action are DENIED.

## BACKGROUND

Plaintiffs are federally authorized direct air carriers that fly customers for compensation or hire under the Federal Aviation Administration's ("FAA") operating rules contained in 14 C.F.R. Part 135 ("Part 135") and/or indirect air carriers authorized by the Department of Transportation ("DOT") who partner with Part 135 direct air carriers to market commercial air carrier services under 14 C.F.R. Part 380 ("Part 380"). (Doc. 16, "Drabinsky Decl." ¶¶ 3-4; Doc. 17, "Lozier Decl." ¶ 3; Doc. 18, "Botimer Decl." ¶ 3). Delux, for example, is a Part 135 carrier. JetSuiteX, an indirect air carrier, negotiates departure times and departure and arrival locations with Delux. JetSuiteX sells tickets to the public, charters a Delux flight, and then Delux operates the flight using the time, location, and destination designated by JetSuiteX. (Drabinsky Decl. ¶ 4.). Like JetSuiteX, XO Global and Blade partner with Part 135 carriers, including Corporate Flight Management, Inc. d/b/a Contour Aviation ("Contour"), to sell individual seats to the public for flights operated by such Part 135 direct air carriers. (Lozier Decl. ¶ 3; Botimer Decl. ¶ 3); 14 C.F.R. § 380.3.

Plaintiffs' operations are structured differently than the large airlines that operate out of the main passenger terminal at HPN ("Terminal"). The Terminal's boarding area is a Security Identification Display Area ("SIDA") space, which requires customers to pass through the standard Transportation Security Administration ("TSA") checkpoints found at most large airports. (Compl. ¶¶ 5-6). As Part 380 operators, however, Plaintiffs' flights enplane and deplane at Fixed Base Operator spaces ("FBOs") at HPN. (*Id*. ¶ 3). Essentially, Plaintiffs' customers can arrive twenty

minutes before a flight, pass through Plaintiffs' TSA-compliant and approved security procedures at the FBO, and avoid long lines and large crowds. (*Id*. ¶ 6). Plaintiffs' business model has been especially attractive to customers since the onset of the COVID-19 pandemic, offering them the ability to avoid crowded terminals and long security lines. (Drabinsky Decl. ¶ 18; Lozier Decl. ¶ 14; Botimer Decl. ¶ 6).

Defendant, in 2004, passed Westchester County Municipal Code § 712.462 ("Section 712.462"), which codified HPN's Terminal Use Procedures. (Compl. ¶ 51). Section 712.462 requires certain air carriers to operate from the Terminal pursuant to a Terminal Use Agreement. The Terminal Use Agreement in turn imposes further requirements, such as the use of a lottery system to determine allocation and flight capacity, and to alter flight schedules to adhere to Terminal ramp allocations and passenger limitation restrictions. *See* Section 712.462(1)-(5). Plaintiffs did not and do not operate from the Terminal pursuant to a Terminal Use Agreement. Instead, Blade and XO Global have been operating from FBOs at HPN since 2015 (Compl. ¶¶ 26, 29); and Delux began operating a 30-seat aircraft from an FBO at HPN in June 2020 (*id*. ¶ 32).

Defendant, however, in October and November 2021, began demanding that Plaintiffs utilize the Terminal for their Part 380 operations and enter into a Terminal Use Agreement to continue operating at HPN. (*Id*. ¶¶ 55, 56). On January 21, 2022, Defendant adopted the Westchester County Airport Operational Policy No. 1 ("Policy No. 1"), which requires Plaintiffs to operate out of the Terminal, enter into a Terminal Use Agreement, and utilize HPN's TSA checkpoints instead of non-SIDA screening processes. (*Id*. ¶ 59).

On March 7, 2022 at 12:55 p.m., Defendant commenced the State Court Action against Plaintiffs and Contour. The State Court Action seeks a declaration that Plaintiffs' operations at HPN are subject to Section 712.462 and Policy No. 1. (Doc. 21-1). Simultaneous with the

commencement of the State Court Action, Defendant moved for a preliminary injunction by order

to show cause, which was signed by Justice Lewis J. Lubell and made returnable on April 8, 2022.

(Doc. 21-2). Later in the evening of March 7, 2022, at 10:35 p.m., Plaintiffs commenced this

action, seeking antithetical relief to the State Court Action: whereas Defendants in the State Court

Action seek a declaration adjudging Section 712.462 and Policy No. 1 *valid* as enforced against

Plaintiffs, Plaintiffs seek a declaration adjudging Section 712.462 and Policy No. 1 *invalid* as

enforced against them—amongst other relief sought herein.

On March 9, 2022, Plaintiffs wrote the Court requesting a pre-motion conference in

connection with their request for a temporary restraining order and preliminary injunction. (Doc.

Doc. 20). After receiving opposition from Defendant, the Court scheduled a conference for March

11, 2022. Because Defendant had indicated to the Court that it had not interfered with Plaintiffs'

flights or taken any action to affect their operation and represented that it would not do so without

a valid order (Doc. 21, Doc. 29), Plaintiffs' application for a temporary restraining order was

denied. (Doc. 14). The Court set the balance of the briefing schedule for Plaintiffs' motion for a

preliminary injunction and permitted Defendant to brief, as part of its opposition, the issue of

abstention in light of the pending, first-filed, State Court Action. The Court further directed that

the parties meet and confer regarding Defendant's representations and encouraged them to enter

into an Order and Stipulation memorializing same.

On March 16, 2022, the Court so-ordered the parties' stipulation which provided, *inter

alia*, that neither Defendant nor any of its agents will, absent a valid court order, take any action

to enforce Policy No. 1 and/or Section 712.462 against Plaintiffs or demand the FBOs to enforce

Policy No. 1 and/or Section 712.462 against Plaintiffs (the "Order and Stipulation"). (Doc. 45).

Defendant opposed Plaintiff's motion for a preliminary injunction and argued in support of

abstention on March 30, 2022. (Doc. 53). The motions were fully briefed with the filing of

Plaintiff's reply memorandum of law on April 11, 2022. (Doc. 56).

## ANALYSIS

I.     Preliminary Injunction

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Grand River*

*Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). A party seeking a preliminary

injunction, in the Second Circuit, generally must establish: (1) the likelihood of irreparable injury

in the absence of an order or injunction; (2) either (a) likelihood of success on the merits or (b)

sufficiently serious questions going to the merits to make them a fair ground for litigation, plus a

balance of hardships tipping decidedly in the movant's favor; and (3) that a preliminary injunction

is in the public interest. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d

Cir. 2015); *see also Int'l Bus. Machs. Corp. v. De Freitas Lima*, No. 20-CV-04573, 2020 WL

5261336, at *5 (S.D.N.Y. Sept. 3, 2020), *aff'd sub nom. Int'l Bus. Machs. Corp. v. Lima*, 833 F.

App'x 911 (2d Cir. 2021)).

Defendant argues that Plaintiffs are not entitled to the requested preliminary injunction

because, *inter alia*, the Order and Stipulation obviates the need for the requested relief. The Court

agrees that the relief sought by the motion for a preliminary injunction has been mooted by the

Order and Stipulation because, in effect, Plaintiffs have obtained the very relief a preliminary

injunction would secure. Plaintiffs, on this motion, seek an order enjoining Defendant from:

> (1) enforcing [Policy No. 1]; (2) enforcing [Section 712.462] as
> applied to the Plaintiffs or any part 135 operators utilized by
> Plaintiffs at [HPN]; (3) preventing or interfering with Plaintiffs
> continuing operations out of the [FBOs] at HPN; and (4) indirectly
> violating any of the orders contained herein.

(Doc. 35).

Defendant represented to the Court and Plaintiffs that it "will not take (and has not taken) any action whatsoever to affect [Plaintiffs'] operations at [HPN] . . . ." (Doc. 21; Doc. 29 ("Notwithstanding [Defendant's] promulgation of Policy No. 1 on January 21st, Plaintiffs have continued to operate the flights in question through the present; other than its initiation of the state court action, Westchester has not interfered with these flights and will not do so without a valid court order.")). Counsel affirmed at the March 11, 2022 conference that Defendant had not and would not take any action to interfere with Plaintiffs' flights or operations at HPN without a court order. (Doc. 50 at 6-9). In addition to those representations, the parties also entered into the Order and Stipulation, which provides, in relevant part, as follows:

> [N]either [Defendant] nor any of its agents will seek to or take any action to enforce Policy No. 1 and/or section 712.462 . . . against Plaintiffs and their Air Carriers without a valid court order; and [Defendant] will not demand, request or otherwise encourage any of the FBOs . . . at [HPN], to seek to enforce [Section 712.462] and/or Policy No. 1 against Plaintiffs without a valid court order. . . .

(Doc. 45). Defendant agreed to, and did, provide a copy of the Stipulation to the FBOs at HPN, informed its agents of the Stipulation, and promised to ensure its agents' compliance with the Stipulation. (*Id*.; Doc. 52 ¶ 5).

Thus, any irreparable harm that might have accrued to Plaintiffs by Defendant's enforcement of Policy No. 1 and Section 712.462 against them has been mooted by the Order and Stipulation. Moreover, the parties' agreement is now an order of this Court and is entitled to the same respect as any order that could have issued as a result of the instant motion. Plaintiffs have received that which they seek to obtain through a preliminary injunction.

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d

Cir. 2009). "To satisfy the irreparable harm requirement, [the movant] must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd.*, 481 F.3d at 66. "[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Rodriguez*, 175 F.3d at 234.

Plaintiffs argue that the Order and Stipulation is temporary and does not indicate whether Plaintiffs are likely to succeed on the merits. Plaintiffs argue in reply that they, their business partners, and their potential customers may be unwilling to invest in and book flights for future dates if they do not have *certainty* as to what the Court will ultimately determine in this action. This potential injury, Plaintiffs argue, can be eliminated only by a finding of a likelihood of success on the merits of Plaintiffs' claims. (Doc. 56 at 14). Plaintiffs, in other words, have shifted the irreparable harm argument they advanced in their reply papers. Now, with the Order and Stipulation in place, the irreparable injury is no longer just an injury that would be caused to their businesses and investments absent the requested injunction. Rather, the irreparable injury that would be caused is that Plaintiffs' customers will not book flights absent a finding by this Court of Plaintiffs' likelihood of success on the merits of their claims.

"Putting aside the serious question of whether a *preliminary injunction*—as distinct from a *final* determination of [Policy No. 1's and Section 712.462's] validity *vel non*—would address this concern," Plaintiffs have not made a sufficient showing of likely irreparable injury. *Levinson*

*v. Cello Music & Film Sys., Inc.*, 199 F.3d 1322 (2d Cir. 1999). Plaintiffs have not made any

showing that their business partners or investors will cease investing in new routes or aircrafts

without a finding of likelihood of success on the merits in this case, or that customers have or will

cease booking flights until the Court finds that Plaintiffs have a likelihood of success on the merits.

The motion papers are devoid of any factual basis for such a speculative conclusion.[2] In short,

Plaintiffs' argument that it will suffer irreparable injury absent a finding from this Court that it has

established a likelihood of success is remote, speculative, and lacks support in fact and law.

The Order and Stipulation obviates the preliminary relief requested. *Chateau Hip, Inc. v.*

*Gilhuly*, No. 95-CV-10320, 1996 WL 437929, at *1 (S.D.N.Y. Aug. 2, 1996) (denying preliminary

injunction where "[m]uch of the relief sought by the motion . . . has been mooted by a stipulation

among the parties . . . ."). Plaintiffs have not made the requisite factual showing of irreparable

harm to warrant the issuance of a preliminary injunction in light of the Order and Stipulation.

Further, the Court need not and will not issue an advisory ruling, opining on the likelihood that

Plaintiffs' claims will or will not ultimately succeed. Plaintiffs have all the relief they need from

the Order and Stipulation entered into by the parties hereto.

The motion for a preliminary injunction is, accordingly, denied.

---

[2] Although Plaintiffs' moving papers contain factual support from persons with personal knowledge of the
losses that they would suffer if forced to comply with Section 712.462 and Policy No. 1 and relocate to the
main terminal at HPN, those facts are now irrelevant to Plaintiffs' argument for a preliminary injunction.
(*See* Drabinsky Decl.; Lozier Decl.; Botimer Decl.). The Order and Stipulation eliminated that variable.

II.   Abstention

Defendant argues that the Court should exercise its discretion and abstain from hearing this case in favor of the first-filed, parallel, pending State Court Action under either of two abstention doctrines: (1) *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ("*Colorado River*"); or (2) *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ("*Wilton*"). The precise question posed is whether this Court should stay or dismiss this action on the sole ground that the State Court Action pending can resolve the entire controversy amongst the parties hereto.

"[A]bstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 817). Indeed, there is a "heavy presumption favoring the exercise of jurisdiction," *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986), as a district court has a duty "to adjudicate a controversy properly before it," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) ("*Moses H. Cone*") (quoting *Colorado River*, 424 U.S. at 813). The Court therefore examines the various factors necessary to determine whether a stay or dismissal of this suit in favor of the State Court Action is a proper exercise of discretion.

A.   *Colorado River* Abstention

The *Colorado River* abstention doctrine is limited. *See* Avoiding Duplicative Litigation, 17A Fed. Prac. & Proc. Juris. § 4247 (3d ed.). The doctrine recognizes that, while "the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction, exceptional circumstances may on occasion permit the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Aventura Techs. Inc. v. World of Residensea II Ltd.*, 646 F. App'x 92, 94

(2d Cir. 2016).

The Court must first determine whether the relevant state and federal proceedings are "concurrent" or "parallel" for purposes of *Colorado River* abstention. *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 117-18 (2d Cir. 1998). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (quoting *Dittmer*, 146 F.3d at 118). Accordingly, two actions are parallel when "there is a 'substantial likelihood' that the state court litigation will 'dispose of all of the claims presented in the federal case.'" *Kingsway Fin. Servs., Inc. v. Pricewaterhousecoopers, LLP*, 420 F. Supp. 2d 228, 232 (S.D.N.Y. 2005). If the Court determines that parallel state and federal proceedings exist, the Court must then assess the existence of "exceptional circumstances." Under the "exceptional circumstances" standard, a district court considers:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cty.*, 239 F.3d 517, 522 (2d Cir. 2001) (citations omitted). While the Court has discretion in applying *Colorado River*, this discretion "must be exercised within the narrow and specific limits prescribed." *Aventura Techs. Inc.*, 646 F. App'x at 94 (citations and internal quotation marks omitted).

As an initial matter, this action and the State Court Action are not fully parallel for purposes of *Colorado River*. There is one party in the State Court Action uninvolved in this action (i.e., Contour), Plaintiffs seek money damages in this Court while the State Court Action is purely

declaratory, and Plaintiffs bring a claim under the Equal Protection Clause in this action which is not at issue in the State Court Action. However, even if the suits were fully parallel, a balancing of the *Colorado River* factors establishes that exceptional circumstances are not present in this case to warrant abdication of federal jurisdiction.

First, there is no res or real property over which either court has assumed jurisdiction. Second, neither forum is more or less convenient than the other; they are literally across the street from each other—the shadow of one building falls onto the other. Accordingly, the first two factors are neutral, which weighs against abstention. *EMS Indus. Corp. v. Acciai Speciali Terni, USA, Inc.*, No. 99-CV-09050, 2000 WL 101233, at *3 (S.D.N.Y. Jan. 26, 2000) ("Factors one and two are neutral, thereby weighing only slightly against abstention"); *Niagara Mohawk*, 673 F.3d at 101.

With respect to the third factor, "[b]y far the most important factor driving *Colorado River* and its progeny is the clear federal policy of avoiding piecemeal adjudication." *Abe v. New York Univ.*, No. 14-CV-09323, 2016 WL 1275661, at *7 (S.D.N.Y. Mar. 30, 2016) (internal quotation marks and alteration omitted)). Contrary to Defendant's argument, abstention would not avoid piecemeal litigation; abstention would promote it. This action is broader in scope than the State Court Action. Plaintiffs' damages and Equal Protection claims asserted in this Court are not at issue in the State Court Action. That Plaintiffs could assert counterclaims in the State Court Action, should they choose to, does not address today's situation—and if this Court were to stay or dismiss this action, Plaintiffs would still have an Equal Protection claim and seek damages that could be pressed in this action later or brought in a separate action. In short, this factor weighs against abstention.

The fourth factor considers the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other. The State Court Action was

indeed the first action filed. Both, however, were filed on the same day within approximately ten

hours of each other. At this juncture, and with today's decision, the instant action has nudged

further ahead than the State Court Action, albeit only marginally. Although the preliminary

injunction motion in the State Court Action was fully briefed on April 7, 2022, prior to the date

set for reply on Plaintiffs' preliminary injunction motion in this action (*see* Doc. 21-2; SCA Doc.

98;[3] Doc. 56), the motion is adjudicated today in this action, before a decision has been rendered

in the State Court Action (*see* SCA Doc. 94 (joint request made to Justice Lubell on April 7, 2022

for "a 30-day adjournment of any decision on the County's preliminary injunction motion")).

However, neither action has truly advanced further than the other. The two matters are generally

proceeding at the same rate and are in the same procedural posture. Accordingly, while this factor

weighs in favor of abstention, it does so only slightly and in the most technical sense.

"Absent a res over which the state court has assumed jurisdiction, or a federal statutory

expression of a preference to avoid piecemeal adjudication of what are essentially local rights . . .

the fifth and sixth *Colorado River* factors take on heightened importance." *Woodford*, 239 F.3d at

523. The rule of decision in this action is supplied by federal law. The Complaint raises affirmative

claims of defensive preemption under the Supremacy Clause. *See, e.g., W. Air Lines, Inc. v. Port

Auth. of New York & New Jersey*, 817 F.2d 222, 225 (2d Cir. 1987). Plaintiffs ask this Court to

determine, *inter alia*, whether Policy No. 1 and Section 712.462 are enforceable against them. The

State Court Action likewise asks Justice Lubell to determine whether Policy No. 1 and Section

712.462 are enforceable against Plaintiffs. The question raised in both actions implicates federal

law, as the critical issue is the extent to which federal laws like the Airline Deregulation Act

("ADA") and Airport Noise and Capacity Act ("ANCA") preempt local regulations like Policy

---

[3] References to the State Court Action docket are cited as "SCA Doc. ___."

No. 1 and Section 712.462. Moreover, the Equal Protection Clause claim entails an independent inquiry, and federal law supplies the rule of decision as to that claim.

Indeed, Defendant has acknowledged that federal law is implicated and must be applied at least in part to decide the case. (Doc. 53 at 18 ("Regardless, because any final resolution 'would require application of both federal and state law,' this fifth factor is 'neutral.'" (citing *Gillette v. Cnty. of Warren*, No. 14-CV-00560, 2015 WL 1608826, at *8 (N.D.N.Y. Apr. 10, 2015)))). "Plainly, when the applicable substantive law is federal, abstention is disfavored . . . . Even where there are some state-law issues, the presence of federal-law issues must always be a major consideration weighing against surrender." *Woodford*, 239 F.3d at 523 (internal quotation marks and alterations omitted). In any event, where a factor is neutral, it weighs against abstention. *EMS Indus. Corp.*, 2000 WL 101233 at *3; *Niagara Mohawk*, 673 F.3d at 101.

The sixth factor weighs in favor of abstention, as state procedures are adequate to protect Plaintiffs' federal rights. Plaintiffs acknowledged this during the March 11, 2022 conference (Doc. 50 at 11-12), and did not address this factor in reply on this motion (Doc. 56 at 12). "Thus, there is no reason to conclude that the New York court cannot adequately protect Plaintiff's rights, and therefore, this factor weighs in favor of abstention." *Dore v. Wormley*, 690 F. Supp. 2d 176, 193 (S.D.N.Y. 2010).

Careful consideration and balancing of the foregoing factors, keeping in mind the "heavy presumption favoring the exercise of jurisdiction," *Bethlehem Contracting Co.*, 800 F.2d at 327, and the Court's duty "to adjudicate a controversy properly before it," *Moses H. Cone*, 460 U.S. at 14, results in a determination that abstention in unwarranted. Accordingly, the Court declines to abstain under *Colorado River*.

13

B. *Wilton* Abstention

The Supreme Court in *Wilton* approved "a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*." 515 U.S. at 286. Under the more "lenient" standard for declaratory judgment actions, a district court should consider:

> (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty. Other circuits have added additional factors: (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy.

*Niagara Mohawk Power Corp.*, 673 F.3d at 105 (citations and internal quotation marks omitted); *see also XL Ins. Am., Inc. v. DiamondRock Hosp. Co.*, 414 F. Supp. 3d 605, 610 (S.D.N.Y. 2019) (courts in this district have also considered factors such as: "the scope of the pending state proceeding and the nature of the defenses available there; whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; whether the necessary parties have been joined; and whether such parties are amenable to process in that proceeding").

The discretionary *Wilton* standard does not apply, however, "where the plaintiff does not seek purely declaratory relief," *id.*, or where the "plaintiff seeks damages in addition to declaratory relief." *Kanciper v. Suffolk Cty. SPCA, Inc.*, 722 F.3d 88, 89 (2d Cir. 2013). *Wilton* abstention was designed for circumstances "where another suit is pending in a state court presenting the same issues, *not governed by federal law,* between the same parties," and "the questions in controversy . . . can better be settled in the proceeding pending in the state court." *Wilton*, 515 U.S. at 282 (internal quotation marks omitted, and emphasis added).

Cases that involve questions of federal law are "fundamentally distinct from *Wilton* because federal law supplies a rule of decision," whereas *Wilton* "involved state law only." *Youell v. Exxon Corp.*, 74 F.3d 373, 376 (2d Cir. 1996) (internal quotation marks and ellipsis omitted). "[T]he *Wilton* Court specifically declined 'to delineate the outer boundaries of [*Brillhart*] discretion in . . . cases raising issues of federal law.'" *Id*. (quoting *Wilton*, 515 U.S. at 289-90). The State Court Action does not involve state law only. Nor does this action raise purely declaratory relief. A review of the competing pleadings reveals, as discussed *supra*, that both state and federal law are implicated, that Plaintiffs have raised a federal claim under the Equal Protection Clause, and that Plaintiffs seek both injunctive and monetary relief in addition to declaratory judgment. (*See* Compl. at p. 36).

Simply put, "Federal adjudication of this issue will not constitute '[g]ratuitous interference with the orderly and comprehensive disposition of [the] state court litigation.'" *Youell*, 74 F.3d at 376 (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). By declining to abstain, this Court would not be reduced to "find[ing] our way through a maze of [state] statutes and decisions." *Id*. (second alteration in original). Rather, the Court would be confronted with Constitutional claims of preemption and Equal Protection and statutory claims under the ADA, ANCA, and other federal statutes. Consequently, the Court does not find *Wilton* abstention warranted in this case.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion for a preliminary injunction and Defendant's request to abstain in favor of the State Court Action are DENIED.

Defendant shall file an answer to the Complaint within twenty days of the date of this Memorandum Opinion and Order pursuant to the Court's April 1, 2022 Order (Doc. 55). The Court will thereafter docket a Notice of Initial Conference.

SO ORDERED:

Dated: White Plains, New York
       May 23, 2022

Philip M. Halpern
United States District Judge