# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DELUX PUBLIC CHARTER, LLC d/b/a JSX
AIR and JETSUITEX, INC.; XO GLOBAL,
LLC; and BLADE URBAN AIR MOBILITY,
INC.,

                Plaintiffs,

     -against-

COUNTY OF WESTCHESTER, NEW YORK,
a charter county; APRIL GASPARRI, in her
official capacity as AIRPORT MANAGER; and
AVPORTS, LLC,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

INDEX NO.  7:22-cv-01930-PMH

**PLAINTIFFS' FIRST SET OF
REQUESTS FOR PRODUCTION OF
DOCUMENTS TO DEFENDANT
COUNTY OF WESTCHESTER, NEW
YORK**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and subject to the following instructions and definitions, Plaintiffs Delux Public Charter, LLC d/b/a JSX Air and JetSuiteX, Inc.; XO Global, LLC; and Blade Urban Air Mobility, Inc., by and through their undersigned counsel, make this First Set of Requests for Production of Documents ("Requests") to Defendant County of Westchester, New York.  The documents shall be produced within thirty days after the date of service hereof, at the office of Troutman Pepper Hamilton Sanders LLP, Attn: Steven Allison, 5 Park Plaza, Suite 1400, Irvine, CA 92614.  Alternatively, pursuant to a stipulation agreed upon by the Parties, production of all documents, electronically stored information, and tangible things that are responsive to these Requests may be sent electronically to the extent practicable.

## **DEFINITIONS**

As used herein, the following terms have the following meanings except where the context clearly requires otherwise:

1.      The definitions set forth in Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") are incorporated herein by reference.

2.      "YOU" or "YOUR" means Defendant County of Westchester, New York and any of its predecessors, successors, affiliates, divisions, departments, as well as any elected officials, advisory boards, agents (including but not limited to Avports LLC and Airport Manager for the Westchester County Airport April Gasparri), officers, members, managers, directors, employees, attorneys, or other persons or entities acting or purporting to act on behalf of the foregoing.

3.      "PLAINTIFFS" means Plaintiffs Delux Public Charter, LLC d/b/a JSX Air and JetSuiteX, Inc.; XO Global, LLC; and Blade Urban Air Mobility, Inc.

4.      "FAA" means the Federal Aviation Administration and any of its predecessors, successors, affiliates, and divisions, as well as any agents, officers, members, managers, directors, employees, attorneys or other persons or entities acting or purporting to act on behalf of any of the foregoing.

5.      "DOT" means the United States Department of Transportation and any of its predecessors, successors, affiliates, and divisions, as well as any agents, officers, members, managers, directors, employees, attorneys or other persons or entities acting or purporting to act on behalf of any of the foregoing.

6.      "TSA" means the Transportation Security Administration and any of its predecessors, successors, affiliates, and divisions, as well as any agents, officers, members, managers, directors, employees, attorneys or other persons or entities acting or purporting to act on behalf of any of the foregoing.

7.      "TUP" means YOUR Terminal Use Procedures.

124942227

8.      "SECTION 712.462" means section 712.462 of the Laws of Westchester County.

9.      "POLICY NO. 1" means Westchester County Airport Public Charter Operational Policy No. 1 issued on January 21, 2022.

10.     "HPN" means Westchester County Airport in White Plains, New York.

11.     "BZN" means Bozeman Yellowstone International Airport in Belgrade, Montana.

12.     "MHH" means Leonard M. Thompson International Airport, formerly known as the Marsh Harbor International Airport, in the Bahamas.

13.     "TCB" means Treasure Cay Airport in the Bahamas.

14.     "FBOs" means fixed based operator spaces at HPN.

15.     "FBO PROVIDER" means a service provider at an FBO, including but not limited to White Plains Aviation Partners, LLC, d/b/a Million Air White Plains, HPN NY Holding, LLC d/b/a Ross Aviation, and Signature Flight Support Corporation, Inc.

16.     "NON-SIDA" means non-Security Identification Display Area.

17.     "PART 135" means 14 C.F.R. Part 135.

18.     "PART 380" means 14 C.F.R. Part 380.

19.     "PART 161" means 14 C.F.R. Part 161.

20.     "PART 121" means 14 C.F.R. Part 121.

21.     "COUNTERCLAIM" means the Answer, Demand for Jury Trial, Affirmative Defenses, and Counterclaims YOU filed on June 19, 2022.

## <u>INSTRUCTIONS</u>

1.      The rules of construction contained in Local Rule 26.3 are incorporated herein by reference.  Terms defined in Local Rule 26.3 are shown in all capitals in the requests below.

124942227

2.      If any documents within the scope of these Requests are within the possession, custody or control of YOUR employees, agents, representatives or any other person over whom YOU have control, or as to which YOU have a right of possession or production, this Request requires the production of such documents.

3.      Where a claim of privilege is asserted in objection to any Request, any subpart thereof, and any information or any document, or any portion thereof, is not produced on the basis of such assertion, in asserting the privilege YOU shall provide in writing the information required by Local Rule 26.2.

4.      To the extent electronically stored information is responsive to any of the Requests set forth below, such electronically stored information should be produced in TIFF format in accordance with Federal Rule of Civil Procedure Rule 34(b)(1)(C).

5.      Each and every document requested should be produced in its entirety, without abbreviation or expurgation or "scrubbing" and should include all attachments or other matters affixed to such document.  If any metadata has been scrubbed, altered or otherwise removed from the native files, identify those files and state the reason for the removal or alteration of the metadata.   All documents and metadata concerning all documents shall be preserved and maintained in their native format throughout the course of this litigation.

6.      If any document or thing called for by this request has been lost or destroyed, identify, with respect to each document:   (i) author(s) or writer(s);  (ii) addresser(s); (iii) addressee(s); (iv) date created; (v) subject matter; (vi) number of pages; (vii) attachments or appendices; (viii) all persons to whom it was distributed, shown or explained; (ix) date of destruction or loss; (x) person(s) authorizing or directing the destruction; (xi) person destroying

the document or person who last had custody of the document; (xii) nature (e.g. letter, memorandum, report, etc.); and, (xiii) reason for destruction or loss of the document.

7.      If YOUR response to any particular request is that no responsive information or documents exist, then YOU must:  (1) state in writing that YOU conducted a good faith search for the requested information or documents; (2) describe the extent of the search; and (3) state that, based on such search, no such information or documents exist.

8.      Responses to this Request are subject to supplementation in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## **REQUESTS FOR PRODUCTION**

1.      ALL COMMUNICATIONS and DOCUMENTS CONCERNING POLICY NO. 1.

2.      ALL COMMUNICATIONS and DOCUMENTS CONCERNING the TUP's or SECTION 712.462's application to PART 135 operators, PART 380 operators, or operators that directly or indirectly offer any air service to or from HPN by enplaning or deplaning passengers at a FBO or a NON-SIDA location at HPN.

3.      ALL COMMUNICATIONS and DOCUMENTS CONCERNING YOUR consideration of allowing PLAINTIFFS to conduct operations from an FBO or a NON-SIDA location at HPN.

4.      ALL DOCUMENTS CONCERNING or COMMUNICATIONS with the FAA, DOT, TSA, or any federal agency CONCERNING promulgation, approval of, or implementation of the TUP or SECTION 712.462.

124942227

5.      ALL DOCUMENTS CONCERNING or COMMUNICATIONS with the FAA, DOT, TSA, or any federal agency CONCERNING promulgation, approval of, or implementation of POLICY NO. 1.

6.      ALL DOCUMENTS or COMMUNICATIONS supporting the contention that YOUR application of TUP or SECTION 712.462 to PART 135 and PART 380 operators received approval from FAA, DOT, TSA, or any other federal agencies.

7.      ALL DOCUMENTS and COMMUNICATIONS establishing that YOU fully complied with ALL required federal administrative procedures in the implementation of the TUP and SECTION 712.462, including but not limited to procedures under PART 161.

8.      ALL DOCUMENTS and COMMUNICATIONS establishing that YOU fully complied with ALL required federal administrative procedures in the implementation of POLICY No. 1, including but not limited to procedures under PART 161.

9.      ALL DOCUMENTS and COMMUNICATIONS establishing that YOUR application of the TUP, SECTION 712.462, and Policy No. 1 to PLAINTIFFS, or other PART 135 and PART 380 operators, is exempt or grandfathered under the Airport Noise and Capacity Act.

10.      ALL DOCUMENTS and COMMUNICATIONS establishing that YOUR application of the TUP, SECTION 712.462, and Policy No. 1 to PLAINTIFFS, or other PART 135 and PART 380 operators, fall within the proprietor exception in the Airline Regulation Act.

11.      ALL DOCUMENTS and COMMUNICATIONS CONCERNING potential reasons, review of, or consideration of implementing, enforcing, or applying the TUP, SECTION 712.462, or POLICY NO. 1 to PLAINTIFFS or any operators that directly or indirectly offer any air service to or from HPN that enplane or deplane passengers outside of the main terminal.

124942227

12.     ALL DOCUMENTS and COMMUNICATIONS CONCERNING HPN's main terminal's current allocations to air carriers and airport users.

13.     ALL DOCUMENTS and COMMUNICATIONS including (without limitation) text messages, letters, e-mails, notes, reports, voicemails, audio/video recordings and memoranda CONCERNING prohibition of operations at any FBO by Single-Seat Charter Operators as defined in POLICY NO. 1 or any airport user providing a Passenger Service as defined in SECTION 712.462.

14.     All DOCUMENTS and COMMUNICATIONS establishing the first time any PART 380 operator (including PLAINTIFFS) used an FBO at HPN.

15.     All DOCUMENTS and COMMUNICATIONS establishing the first time a "Single Seat Charter Operator" as defined in POLICY NO. 1 used an FBO at HPN.

16.     All DOCUMENTS and COMMUNICATIONS relating to current and historical legislative materials concerning the adoption and implementation of the TUP, Section 712.462, and POLICY NO. 1.

17.     All DOCUMENTS and COMMUNICATIONS relating to PLAINTIFFS, including (without limitation) text messages, letters, e-mails, notes, reports, voicemails, audio/video recordings and memoranda.

18.     All DOCUMENTS and COMMUNICATIONS relating to the reason(s) for adopting a 9-seat limitation for "Airline" in SECTION 712.462 and "Single Seat Charter Operators" in POLICY NO. 1.

19.     All minutes of meetings of the Westchester County Board of Legislators or any other Committee of the Westchester County Board of Legislators relating to the TUP, SECTION 712.462, or POLICY NO. 1.

124942227

20.     All DOCUMENTS and COMMUNICATIONS relating to the departure slot system at HPN.

21.     All DOCUMENTS and COMMUNICATIONS relating to any and all operations of any aircraft with more than nine seats under PART 135 at HPN.

22.     All DOCUMENTS and COMMUNICATIONS relating to any and all operations of any aircraft with more than nine seats under PART 380 at HPN.

23.     All DOCUMENTS and COMMUNICATIONS relating to any safety or security incidents that have occurred on flights to or from HPN, which were operated by PART 121 operators.

24.     All DOCUMENTS and COMMUNICATIONS relating to any safety or security incidents that have occurred on flights to or from HPN, which were operated by PART 135 operators.

25.     All DOCUMENTS and COMMUNICATIONS relating to any ski clubs or other affinity tours ever operated at HPN.

26.     All DOCUMENTS and COMMUNICATIONS relating to any and all charter flights affiliated with the Discovery Land Company, which were operated under PART 380 from HPN, including but not limited to, flights to BZN, MHH, or TCB.

27.     All DOCUMENTS and COMMUNICATIONS relating to any and all charter flights operated under PART 380 from HPN, including but not limited to, flights to BZN, MHH, or TCB.

28.     All COMMUNICATIONS between YOU and any other airports or airport operators relating to PART 380 operations by any operator.

124942227

29.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 173 of the COUNTERCLAIM that "[s]o long as those flights are on aircraft with nine seats or fewer, the TUPs do not apply because the definition of 'Airline' is not met."

30.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 178 of the COUNTERCLAIM that "per the TUPs, the definition of 'Passenger Service' applies 'regardless of whether such individual seats are offered or sold directly by the aircraft operator, a charterer, another Airline, or any other entity.'"

31.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 179 of the COUNTERCLAIM that "[i]n mid-2021, the County and Avports determined that flights such as those described above violate the TUPs, to the extent they involve individual-seat sales, are offered to 'the public or a segment of the public,' and are flown on aircraft containing more than nine (9) seats from an FBO as opposed to from the Airport terminal by an operator with a Terminal Use agreement and Ramp Allocation."

32.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 191 of the COUNTERCLAIM that "[a]s evidenced by the document itself, Public Charter Operational Policy represented both a determination of the applicability of a long-standing law to a newly emerging business model and a proposed accommodation to that business model on a going-forward basis."

33.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 195 of the COUNTERCLAIM that "there are two separate and equally-acceptable ways in which Plaintiffs may come into compliance with County law.  First, the air charter brokers (Blade, JSX, and XO) can permanently cease their practice of selling tickets for individual seats on flights with more than nine seats to 'the public or a segment of the public.'

124942227

Second, the operators (Contour and Delux) can enter into TUAs, obtain Ramp Allocations, and operate the flights in question from the Airport terminal."

34.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 199 of the COUNTERCLAIM that "[t]his requirement does not require an airport sponsor to accommodate all operators at its FBOs simply because that is their business preference.  The essence of Grant Assurance 22 is that the sponsor must not 'unjustly' discriminate, but sponsors may and do treat differently distinct categories of users, to wit: the new category of 'Single Seat Charter Operations' (see Ex.C) vs. the whole aircraft, Part 135 On-Demand charter operations that have long been served at Airport FBOs."

35.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 200 of the COUNTERCLAIM that "Plaintiffs have been treated no differently than any other Single Seat Charter Operator."

36.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 201 of the COUNTERCLAIM that "if Plaintiffs were permitted to conduct this type of operation at the FBOs, despite County law to the contrary, the County could in fact be accused of unjustly discriminating against other airlines that offer single-seat sales to 'the public or a segment of the public' on aircraft with more than nine seats, such as United, Delta, and jetBlue, all of whom operate from the Airport terminal pursuant to a TUA."

37.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 202 of the COUNTERCLAIM that "[t]he County's TUPs do not conflict with 49 U.S.C. § 41713(b)(1)."

38.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 202 of the COUNTERCLAIM that the "TUPs do not regulate prices, routes or

services of an air carrier; they are simply the long-standing mechanism by which the County 'carr[ies] out its proprietary powers and rights,' as permitted under 49 U.S.C. § 41713(b)(3), such as its power to regulate traffic at the Airport terminal."

39.     All DOCUMENTS and COMMUNICATIONS relating to YOUR contention in paragraph 203 of the COUNTERCLAIM that "the TUPs [do not] conflict with the Airport Noise and Capacity Act of 1990 ('ANCA'), which limits the ability of airport sponsors to impose new noise or access restrictions."

40.     All DOCUMENTS that support YOUR claim for declaratory relief in the COUNTERCLAIM.

41.     All DOCUMENTS that support YOUR claim for injunctive relief in the COUNTERCLAIM.

42.     All DOCUMENTS YOU intend to rely on at trial.

43.     All DOCUMENTS or COMMUNICATIONS (other than with YOUR counsel) relating to this lawsuit.

July 19, 2022                         By:  /s/ Steven D. Allison
                                      Steven D. Allison
                                      TROUTMAN PEPPER HAMILTON
                                      SANDERS LLP
                                      5 Park Plaza, Suite 1400
                                      Irvine, CA 92614
                                      949.622.2700
                                      steven.allison@troutman.com

                                      *Attorneys for Plaintiffs*

124942227

<u>**CERTIFICATE OF SERVICE**</u>

I, Felisa H. Lybarger, declare:

I am a citizen of the United States and employed in Orange County, CA.  I am over the age of 18 and not a party to the within action; my business address is 5 Park Plaza, Suite 1400, Irvine, CA  92614-2545.

On July 19, 2022, I served the following document(s) described as:

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT COUNTY OF WESTCHESTER, NEW YORK**

☒    **BY OVERNIGHT MAIL**: As follows: I am readily familiar with the firm's practice of collection and processing correspondence for overnight mailing. Under that practice, it would be deposited with overnight mail on that same day prepaid at Irvine, CA in the ordinary course of business.

☒    **BY ELECTRONIC MAIL**: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses, as last given or submitted on any document which he or she has filed in the case, listed on the attached service list.

On the following parties:

 David Henry Riddle Chen
 Sean T. Carey
 John Nonna
 Westchester County Attorney's Office
 Michaelian Office Building
 148 Martine Avenue, Room 600
 White Plains, New York 10601
 Email: dhca@westchestergov.com
   stca@westchestergov.com
   jnonna@westchestergov.com

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on July 19, 2022, at Irvine, CA.

_____
Felisa H. Lybarger

-12-

124942227