```
 1 | UNITED STATES DISTRICT COURT
   | SOUTHERN DISTRICT OF NEW YORK
 2 |
   | ----------------------------------------x
 3 | DELUX PUBLIC CHARTER, LLC d/b/a JSX
   | AIR and JETSUITEX, INC., XO GLOBAL,
 4 | LLC; and BLADE URBAN AIR MOBILITY, INC.,
   |
 5 |                          Plaintiffs,
   |                                    22 CV 01930(PMH)
 6 |     -vs-
   |
 7 | COUNTY OF WESTCHESTER, NEW YORK, a
   | charter county; APRIL GASPARRI, in her
 8 | official capacity is AIRPORT MANAGER;
   | and AVPORTS, LLC,
 9 |
   |                          Defendants.
10 | ----------------------------------------x
   |
11 |                          United States Courthouse
   |                          White Plains, New York
12 |                          December 21, 2022
   |
13 |                 ** VIA TELECONFERENCE **
   |
14 | Before:  HONORABLE PHILIP M. HALPERN,
   |             United States District Judge
15 |
   | A P P E A R A N C E S:
16 |
   | TROUTMAN, PEPPER, HAMILTON, SANDERS, LLP
17 |     Attorneys for Plaintiffs
   | BY:  STEVEN D. ALLISON
18 |     NICHOLAS J. SCHUCHERT
   | --and--
19 | DORF & NELSON, LLP
   |     Attorneys for Plaintiffs
20 | BY:  PAUL J. NOTO
   |
21 | WESTCHESTER COUNTY ATTORNEY
   | LAW DEPARTMENT
22 |     Attorneys for Defendant, County of Westchester
   | BY:  JOHN NONNA
23 |     DAVID H. CHEN
   |     SEAN T. CAREY
24 |     PHOENIX MARINO
   |
25 | *Proceedings recorded via digital recording device*
```

122122                              Proceedings

1        THE LAW CLERK:  In the matter Delux Public Charter,

2   LLC, et al. against County of Westchester, New York.

3        Would counsel for plaintiffs please note your

4   appearance?

5        MR. ALLISON:  Good morning, Your Honor.  Steven

6   Allison, Troutman Pepper, for each of the plaintiffs.

7        MR. SCHUCHERT:  Good morning, Your Honor.  Nick

8   Schuchert of Troutman Pepper for each of the plaintiffs as well.

9        MR. NOTO:  Good afternoon, Judge.  Paul Noto, Dorfman

10  Nelson for plaintiffs as well.

11       THE LAW CLERK:  And counsel for defendants, please

12  note your appearance.

13       (Cross-talk)

14       MR. NONNA:  John Nonna.  Yes, John Nonna, Westchester

15  County Attorney for Westchester County.

16       MR. CHEN:  Good afternoon, Your Honor.  Dave Chen of

17  the Westchester County attorney's office for the defendants.

18       MR. CAREY:  Good afternoon.  Sean Carey, assistant

19  county attorney for the defendants.

20       MS. MARINO:  Good afternoon.  Phoenix Marino,

21  assistant county attorney for the defendants.

22       THE COURT:  Good afternoon, everybody.  A lot of

23  horsepower on this call, huh?

24       MR. NONNA:  Yes, Judge.

25       MR. NOTO:  We hope so.

Proceedings

```
 1          THE COURT:  Mr. Noto, it's been a long time.  Nice to
 2 hear your voice.
 3          MR. NOTO:  You, too, Judge.  You, too.
 4          THE COURT:  And by the way, just so everybody is
 5 square, I've known Mr. Noto decades and decades, and so people I
 6 know you'd think usually that's -- you know, oh, they got a leg
 7 up with the judge, but the people I know I am always harder on.
 8 So you have nothing to worry about.
 9          MR. NOTO:  You're making me sound old.
10          THE COURT:  I have known Mr. Noto for two decades.
11 So --
12          MR. NOTO:  You're right.
13          THE COURT:  So you are old, Mr. Noto.
14          MR. NOTO:  Right.  Thank you.
15          THE COURT:  All right.  I am a little surprised by the
16 digging in of the heels here, frankly.  So you want me to rule;
17 I am happy to rule, but let's go one at a time here and just
18 flesh this out.
19          So the first ask is for 12 of 17 members to do
20 custodial searches.  I think it's overbroad, but what I am
21 willing to do is -- and because I don't think a blanket
22 objection is ever sufficient in a discovery dispute, but what my
23 inclination is, is to limit these 12, limit their search to the
24 passage of this Act and the identification and discussion of
25 airlines other than the plaintiffs with respect to the
```

1  commencement of the action.

2          In other words, I don't think you need all of this,

3  frankly, Mr. Allison or Mr. Noto.  What I think, though, is it

4  could -- I mean, I can't tell yet -- but it could be relevant

5  information with respect -- that they possess with respect to

6  the passage of the Act, and with respect to commencement of

7  legal action against others than the plaintiff.  Frankly, I

8  think that's possibly relevant, and so I am prepared to permit a

9  limited search by these 12 of what they have with respect to

10  those two topics and no others.

11          MR. NONNA:  Your Honor, if I could just make a point,

12  I don't know if Mr. Allison and Mr. Noto and the plaintiffs have

13  found this in our document production.  We made six document

14  productions and produced a lot of documents, but in that

15  document production, it's actually the committees that these

16  board members were on, the committee report indicating why they

17  are -- why they are voting for this Act to allow commencement of

18  litigation.  We are not talking about the original TURs.  We are

19  talking about the act to commence litigation.

20          THE COURT:  Right.  That's what I am talking about,

21  the act to commence litigation.

22          MR. NONNA:  So they have that memo.  They have my

23  letter to them, which is always a public record.  Whenever I

24  recommend litigation, I have to state why, so they have that.

25  They have the minutes of the meeting.  You will see we went into

1  executive session to discuss legal strategy.  So anything having

2  to do with the litigation itself and what we might allege would

3  be subject to privilege.  So --

4          THE COURT:  Of course it would.

5          MR. NONNA:  We are happy to do the search, but I don't

6  think it's going to tell them anything they don't already have.

7          THE COURT:  Well, but I mean -- and Mr. Nonna, to your

8  point, you may be a hundred percent right, but since neither

9  camp can figure out how to solve this problem, I just did.  So

10  it's going to be limited to the Act and the other airlines, and

11  yes, you can have a search, but for no other topics.  Okay?

12          Now --

13          MR. ALLISON:  Fine with us, Judge.  Thank you.

14          THE COURT:  With respect to Mr. Latimer, you know,

15  Mr. Latimer was a member of the Board of Legislators before he

16  came became the County Executive, and if there's -- if there's

17  material he has in connection with the two topics, right -- just

18  give me a second.

19          (Pause)

20          THE COURT:  Yeah, I mean, I'm going to permit a

21  limited search as to whether Mr. Latimer has any documents

22  related to Section 712.462 when it was being passed -- when it

23  was being passed.  If he has documents in that category, he can

24  search, and if he has documents subject to whatever privileges

25  that may apply, he will take a look, and he will let you know.

122122                          Proceedings

1  I don't think anything else is relevant.  You know, I'm looking
2  at these document demands, and frankly, any document demand in
3  my world that begins with "all documents and communications,"
4  there's tons of case law that suggests that those words, "all
5  documents and communications" mean that whatever follows those
6  words is overbroad.  So these are way, way, way beyond what I
7  think you really need.  I don't have a problem with that limited
8  search by Mr. Latimer, and I am going to direct it.
9          MR. NONNA:  And this is a search of when he was a
10 county legislator back in 2004 and actually voted for this --
11 these --
12          THE COURT:  Correct.
13          MR. NONNA:  Got it.
14          MR. ALLISON:  Your Honor, this is Mr. Allison.  Could
15 I raise one issue with respect to Mr. Latimer as a custodian?  I
16 understand your ruling, and that makes sense, but there is one
17 additional area that I think makes sense because Mr. Latimer
18 isn't just a legislator, of course.  He became County Executive,
19 and he was County Executive when Policy No. 1, which is the
20 policy that really started this dispute, was promulgated.  That
21 was not passed by the County Board.  That was promulgated by the
22 executive, and Mr. Latimer being the County Executive and the
23 final authority on that.
24          So we think any communications or documents that he
25 has related to that Policy No. 1 would also be potentially

1   highly relevant and should be included and I don't think it

2   would increase the burden substantially at all.  So I would

3   suggest that -- or ask that Your Honor consider including that

4   in the --

5              THE COURT:  Mr. Nonna?

6              MR. ALLISON:  -- search terms.

7              MR. NONNA:  I just want to make it clear.  Policy No.

8   1 was a settlement offer to the plaintiffs.  It was never put

9   into effect.  It was a settlement offer.  It was promulgated by

10  AvPorts in conjunction with Joan McDonald as the Director of

11  Operations, who we're producing for a deposition.

12             MR. ALLISON:  But -- this is Mr. Allison.  Is the

13  suggestion that Mr. Latimer was not involved at all; had no

14  idea; did not approve Policy No. 1?  I find that to be almost

15  incredible to believe.

16             MR. NONNA:  He did not approve Policy No. 1.  It was

17  approved by Joan McDonald in conjunction with AvPorts.

18             THE COURT:  Why don't you take the deposition, and if

19  you need to come back, come back?

20             MR. ALLISON:  That's fine, Your Honor.

21             MR. NONNA:  You can take Joan McDonald's deposition.

22  She will be our 30(b)(6) witness, and if she can provide

23  information -- which I don't think ever happened -- that George

24  Latimer approved this, then we can talk about a search for

25  Latimer or his deposition.

1        THE COURT:  I just said that.  So that's what we are

2   going to do.

3        Now, the County should be compelled on 17 and 28.  All

4   documents relating to plaintiffs is not going to happen.  So I

5   realize you narrowed it to operations at HPN.  I just -- it's

6   too broad.  You are not out of time.  Come up with another

7   demand.  That one isn't going anywhere.

8        MR. NONNA:  Judge, I would like to point out the fact

9   that there's other demands that we responded to that basically

10  duplicate a lot of this, and I can get a more tailored and

11  narrow.  For instance, all documents and communications

12  establishing your application of these TUP to plaintiffs or

13  other Part 135 and Part 380 operators; so that deals with

14  plaintiffs directly and the application of the terminal use

15  procedures to them.  We have produced those documents.

16        And there's several other requests that basically

17  duplicate the broad request but narrow it to the issues in the

18  case, and I would ask them to look at those.  That's number 10,

19  number one and number two, and see if what we produced in

20  response to those requests really gives them what they need.

21        THE COURT:  You are suggesting that the revision that

22  may or may not come, they should look at those before they

23  revise, and I agree.  I think that's good common sense.  Okay.

24        With respect to 28, I don't -- I have a lot of

25  admiration for lawyers' creativity, but what does other airport

122122                          Proceedings

1   communication relating to Part 380 operations by any operator

2   have to do with this?  Nothing.

3          MR. ALLISON:  Your Honor, can I address Your Honor's

4   question?  Because, in fact, we have actual documents that show

5   that already we have seen some documents that they were -- well,

6   let me back up.  There is a piece of context.

7          There's other litigation with the County of Orange

8   against one of these clients on the same issues.  They, in fact,

9   communicated with that airport to apparently coordinate these

10  litigations and also communicated with a number of others.  That

11  could be a highly relevant to show that they knew that this was

12  discriminatory; that they knew that perhaps it violated federal

13  regulations.  And so it's highly relevant, and we tried to keep

14  it as narrow as we could, but this is not a fishing expedition.

15  We have some evidence already that these communications

16  occurred.

17         THE COURT:  So you are saying that -- hold on.  You

18  are saying that communications by municipal officials, airport

19  to airport, has some bearing on what Westchester County's doing

20  and their knowledge of illegal behavior?

21         MR. ALLISON:  It sure could.  There is an equal

22  protection clause.  If other air -- if they are coordinating

23  with other airlines -- to other airports -- excuse me, Your

24  Honor -- to single us out, to coordinate ways in which to force

25  us out of federally backed airports, that's highly relevant to

1   our equal protection clause argument; and if some of those

2   airports neglect or reject it and said, no, we won't do that or

3   we won't be involved in that, or we think you're wrong, I think

4   that would be very relevant.

5          THE COURT:  Mr. Nonna?

6          MR. NONNA:  Westchester County Airport is the only

7   airport in the country that has 712.462, these terminal use

8   procedures.  So the relevance of other airports' rules and

9   regulations is irrelevant because they don't have these terminal

10  use procedures.  We are the only airport in the country that has

11  them.

12         And yes, we know about this Orange County litigation.

13  We are interested in it.  We wanted to find out what the issues

14  were.  There were different issues in that litigation.  They

15  have to do with a lease given to a fixed base operator and not

16  terminal use regulations like we have here in Westchester.

17         MR. ALLISON:  Your Honor, I could address each one of

18  those if I need be.  These sound more like admissibility

19  arguments than they do like discovery relevancy arguments,

20  but --

21         THE COURT:  Yeah, I am going to deny the request.

22  You've got plenty of time to flesh out a little -- this request

23  says, all communications between you and any other airports or

24  airport operators relating to Part 380 operations by any

25  operator.  The answer to that is, I am not going to direct a

1   response.  It's miles overbroad, and it's not appropriate in its

2   current form.

3           That is not to say, Mr. Allison, that as you sharpen

4   your knife here, and your pencil, you can't come back with

5   another document demand appropriately limited and tailored to

6   what it is you really are looking for.  This looks for all

7   communications irrespective of airport related to Part 380

8   operations.  It's too broad.  I am not doing it.

9           But I am encouraging that when you get together with

10  Mr. Nonna or whomever, and you begin to parse through what it is

11  you really want, that you get specific and get precise, and it

12  will be a little more easy for me to understand why you may need

13  something, but this kind of a request is way, way, way

14  overbroad.

15          MR. ALLISON:  I understand, Your Honor.  We thought we

16  had done that in the meet-and-confer process and had narrowed

17  it, but we will propound a more specific request and do that.

18          THE COURT:  Yeah, I mean, before you go and propound,

19  let me urge something here.  Let me back up for a second.

20          I don't know how many thousands of dollars per hour of

21  hourly rates we have on the phone, but I have a lot of respect

22  for all of these names, most of whom I know.  And I know this:

23  When you get into litigation and you lose sight of the fact that

24  before you were so lucky and privileged as to become advocates

25  for your clients, you took on a role as an officer of the court,

1   all of you.  And I don't need to lecture you about the role of

2   an officer of the court, and I am not suggesting that any of you

3   are not obliging the role, but please, lean on that role with

4   each other.  I am going to permit that which the rules permit.

5   Things that are overbroad in my mind because it's "all" and

6   "everything," don't infer from that one way or the other.  They

7   need to be more narrowly tailored.  I realize this is a little

8   bit contentious.  I realize on the plaintiffs' side that

9   business is -- the entirety of the business model is at risk in

10  some respects, although I am not sure that that's totally true,

11  and I realize on the County's side, they have a perfect right to

12  regulate their airports.  I get all of those things.

13          Put those things to the side, will you? and give each

14  other what you are entitled to and what you need.  That's what I

15  am going to permit.  The broad "everything" and "anything," it's

16  not going to fly with me.  So please, when you -- rather than

17  just -- in fact, I am going to direct that with respect to the

18  discovery, the documents, that you meet and confer on a regular

19  basis -- monthly, if not every other week -- until you have

20  resolved all of your issues so that you can talk to each other,

21  and everybody -- Mr. Nonna, you, Mr. Allison, you and your

22  team -- you are going to have to give a little.  Okay?  There's

23  no reason to be at each other's throats.

24          The issue here is pretty clear, and they are entitled

25  to whatever documents may lead to other documents, generally

1  speaking, that are helpful and relevant here; but they don't

2  have to be admissible, and they can be a little bit on the

3  broader side because, you know, when a plaintiff is asking for

4  things, sometimes they don't know what it is they are really

5  looking for until they get into it.

6              So please, meet and confer on a regular basis.  Please

7  try and proceed informally with each other.  Do it in writing,

8  of course.  Send notices, send demands.  But I am insisting now

9  that you meet and confer, one from each side, and review your

10 discovery demands outstanding and what you can do to help each

11 other from now and through the end of February, and maybe you

12 will buy each other lunch, and who knows? maybe you will get

13 into a settlement dialogue for crying out loud.

14             MR. ALLISON:  Your Honor --

15             (Cross-talk)

16             MR. NONNA:  Your Honor, may I being heard for a

17 second?  It's John Nonna.  I do have to say with respect -- with

18 respect for Mr. Allison and his team and Mr. Noto, we have been

19 -- we have been working very civilly and cordially, although we

20 have a few contentious issues here at the end of the day, we

21 have had a number of meet-and-confers about search terms, about

22 document requests, and we have worked together.

23             THE COURT:  Great.

24             MR. NONNA:  The fact that we have a few disputes

25 shouldn't lead Your Honor to think we have been, you know,

1  fighting each other tooth and nail on everything.  We have been

2  trying to work together.

3          THE COURT:  Great.

4          MR. NONNA:  And we have a good relationship.

5          Mr. Allison, I think you would agree with that,

6  hopefully.

7          MR. ALLISON:  I concur, and I think -- I was about to

8  say something along the similar lines.  So, Your Honor, we

9  certainly have no problem with abiding by the letter and spirit

10 of your suggestions.

11         THE COURT:  Yes.

12         MR. NOTO:  And we have certainly talked about

13 potential, you know, having settlement conversations, Judge.  So

14 we are very much aware of the need to save everybody time and

15 money here and try to resolve it.

16         THE COURT:  Well, it begs for a solution.  I mean, it

17 begs for a solution, this problem that you have confronted.

18         Okay.  Now, on the depositions, you know, my

19 inclination for the moment is ten depositions is plenty of

20 depositions.  I don't know why -- I don't fully understand why

21 you need, I mean, all of these depositions, frankly.  And if you

22 -- if you can come back with some explanation, tangible

23 explanation as to why just because there are, you know, a dozen

24 Board of Legislators that you -- out of the 17, you want to make

25 inquiry of, that's not a really good reason to go beyond ten.

1           If there are pockets of information, Mr. Allison, you

2   need that you can't get from the others, that's something

3   entirely different; but just to say wholesale, yeah, go ahead,

4   take 12 depositions.  You will come back, you'll say, I need

5   three more, Judge, I need five more, without really, you know,

6   having an excellent reason.

7           And on the other hand, you know, a blanket refusal to

8   give deposition testimony, that's not going to fly with me,

9   either.  So I am a little lost as to the -- I mean, I've looked

10  at the letter.  I'm trying to understand why more than ten --

11  ten is a lot of depositions.  I realize you've got a Board of

12  Legislators here, but complicated factual and legal issues, and

13  the number of parties, plaintiff believes that an additional two

14  beyond the ten is appropriate.

15          And the defendant says, you know, why are you taking

16  Latimer and Shimsky? and you don't need that.  And so I am -- I

17  am not really sure I have enough to affirmatively say yes, and

18  usually when I don't have enough to say yes, I say no.

19          So I am happy to hear you, Mr. Allison and Mr. Nonna,

20  for a minute, but my inclination is to say, let's take ten, and

21  then come back and tell me why it is you need more.  This isn't

22  so complicated; is it really, Mr. Allison?

23          MR. ALLISON:  Your Honor, and let me try to put a

24  little flesh on the bones.  We had the five-page limit so we

25  probably --

1          THE COURT:  Yes, you do.

2          MR. ALLISON:  -- didn't get as much as we wanted to,

3   but so let's start with -- at the starting point.  They

4   identified in their initial disclosures seven witnesses that

5   they believed had information that supported their claims or

6   defenses, so we start with that seven.  I think it's fairly well

7   established that if they are going to identify seven people that

8   support their claims or defenses, I have the right to take those

9   seven people.

10          When you add two 30(b)(6) depositions, and you are

11  saying why two?  Well, because AvPorts -- if you remember them,

12  who we allowed to -- they were a party we allowed to leave the

13  case on the representation they would provide evidence in

14  deposition -- run the airport for the County.  So that's two

15  30(b)(6)s there.  So you get nine --

16          THE COURT:  One is a party; one is a non-party.

17          MR. ALLISON:  Right.  You get to nine right there, and

18  as we all know, the 30(b)(6) witnesses often overlap with those

19  percipient witnesses, so it doesn't really turn out to be an

20  additional deposition, but in the counting, they count, right?

21          So then to get to 12, you have the three that are

22  listed here:  Mr. Latimer, who we have already discussed why we

23  believe he is relevant.  Your Honor suggested we depose

24  Ms. McDonald first, and then go from there, and we will do that.

25          Mr. Jenkins, who is the Deputy County Executive, I

1   mean, he sent emails to our clients.  When I say "our clients,"

2   I mean the flying public, customers, asserting that we were in

3   violation of the law.  I know that there is a rhetoric by

4   Mr. Nonna that that's not what they were saying or that's not

5   what they meant or whatever, but it's pretty relevant that he

6   sent communications to the actual customers who fly on our

7   airlines.  So I think that's pretty hard to argue he doesn't

8   have relevant information.

9           And then Ms. Shimsky is the Board of Legislators -- we

10  did not want to take every member of the Board of Legislators.

11  We are not trying to do that nor do we necessarily think that

12  would be appropriate.  She is the chair of the committee that

13  oversees the airport.  We thought that she would be the most

14  appropriate person there.  So that's how you get to 12.  It's

15  not a -- it's not a -- you know, a complicated --

16          THE COURT:  Mr. Nonna, what's wrong with that?

17          MR. NONNA:  What's wrong with it is just in a general

18  matter this case really boils down to two legal issues:  Whether

19  the terminal use regulations are grandfathered under ANCA, and

20  we produced a lot of documents on that issue from the FAA as

21  well.

22          Secondly, whether it's preempted under the Airline

23  Deregulation Act or subject to the propriety of rights, those

24  are purely legal issues.  They are not factual issues that a

25  fact witness is going to be able to cast any light.

1          Ms. Shimsky, Mr. Latimer, and Mr. Jenkins aren't going

2  to be able to give legal opinions as to the County's proprietary

3  rights.

4          As far as Mr. Jenkins, to be clear, he was responding

5  to emails that the plaintiffs drafted and had their customers

6  send to the County, and he was responding to emails that the

7  plaintiffs actually had sent -- caused to be sent to the County.

8  So whether he has relevant information other than what he was

9  told by counsel, you know, is unlikely.

10         So we are not going to contest the fact they have a

11  right under the federal rules to take ten depositions.  In fact,

12  all we are taking is for each plaintiff, one 30(b)(6) fact

13  witness for each plaintiff.  That's all we are taking.

14         THE COURT:  I mean --

15         MR. NONNA:  That's all that's really necessary.

16         THE COURT:  I get it.  All right.

17         You know what?  I am going to permit it.  I am going

18  to let 12 depositions, no more than that.  I agree that you have

19  a right to the seven witnesses.  I agree that you have the

20  30(b)(6).

21         I think undoubtedly, Mr. Allison, I don't know what

22  you are going to get out of Mr. Latimer and Ms. Shimsky, but

23  have at it; but I would urge that that's -- and the main reason

24  is not because there are just issues of law, there is an equal

25  protection claim.  There's other claims here.  I don't know that

1  they go anywhere, but we are in the discovery phase, and I would

2  not want to create a long-term record for whatever result comes

3  that when the plaintiffs go up, should they be the ones to go

4  up, and I am not -- don't read into it, but I don't want to

5  create a record that they didn't have a full and fair

6  opportunity to do whatever discovery they thought was reasonably

7  appropriate and that the judge got in the way of it.  I'm not

8  going to do that.  I am going to let the discovery go forward.

9         And please, let's get through these depositions.  And

10  by the way, Mr. Allison, I am very sensitive to you taking

11  depositions of public officials who are busy, and you are going

12  to do it in a way that does not interrupt their mandatory

13  obligatory items on their calendars.  So just figure out how to

14  do that.

15         MR. ALLISON:  Of course, Your Honor.  And again, I

16  don't have the same length of experience with any of the three

17  of you, but anybody who has practiced with me knows that I don't

18  play games in that regard, and we get them scheduled in the

19  least disruptive way to all of the parties involved, and I take

20  efficient depositions, and we don't waste time.  So --

21         THE COURT:  Yes, I mean, I can't imagine you need

22  these depositions to go seven hours -- any of them, frankly --

23  but I am not ruling on that.

24         All right.  What else?  Is there anything else I can

25  do for either of you?

1          MR. CHEN:  Just on that note, Your Honor, I think

2  Legislator Shimsky --

3          THE COURT:  Mr. Chen?

4          MR. CHEN:  I am sorry.  This is Dave Chen on behalf of

5  defendants.  Legislator Shimsky has actually been elected to the

6  State Assembly and is off to Albany relatively soon.  So I --

7  her schedule, in particular, might really present some

8  difficulties, especially considering our pretty tight

9  discovery -- fact discovery timelines.  I'm just throwing that

10 out now so that everyone is aware of it.

11         THE COURT:  Yeah, well, you are going to have to work

12 around it because, as you know, my reputation precedes me.  I

13 like to run tight discovery schedules, so maybe you can get her

14 before she heads to Albany.

15         MR. ALLISON:  Right.

16         MR. NONNA:  We will try to get her for very early on.

17         MR. ALLISON:  Yup, and if need be, Your Honor, I am

18 happy to go to Albany in January.

19         THE COURT:  Okay.  Bring your skis.

20         MR. NOTO:  Nobody wants to do that.  That, I can

21 assure you.

22         THE COURT:  All right.  Counsel, take good care.

23 Enjoy your holidays, and I look forward to working with you in

24 this case in the future.

25         MR. NOTO:  Thank you, Judge.

Proceedings

1          MR. ALLISON:  Thanks, Your Honor.

2          MR. NONNA:  Thank you, Judge.

3                          -o0o-

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25