Troutman Pepper Hamilton Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
troutman.com



March 6, 2023 (**VIA ECF**)
Honorable Philip M. Halpern
300 Quorropas Street
White Plains, New York 10601-4150

**Re:**  *Delux Public Charter, LLC, et al. v. County of Westchester, et al.* **(Index No. 22-cv-01930)**

Dear Judge Halpern:

Pursuant to Rule 4.D and Local Rule 37.2, Plaintiffs request a pre-motion discovery conference and submit this pre-motion joint letter with Defendant.[1]

### Plaintiffs' Position

**I.     The County Must Produce the Memoranda Shared With Peter Schlactus.**

The County withheld as privileged memoranda sent to Peter Schlactus, a non-County employee, regarding the Terminal Use Procedures ("TUPs") applicability to public charterers - i.e., the central issue in this litigation. Mr. Schlactus is co-founder of the Coalition To Prevent Westchester Airport Expansion, the Rye Brook Airport Advisory Council Chairperson and a County Airport Advisory Board ("AAB") member. Following public conversations regarding the TUPs applicability to charterers, on March 1, 2019, Mr. Schlactus sent an email referencing a memorandum from the County. The email was sent from his private Gmail account with only his name in the signature block. In his email, contrary to the County's present position, Mr. Schlactus quotes the memorandum, indicating the County was responsive to "my concerns", including the County's conclusion the TUPs "'do not apply to JetSmarter or Federal Aviation Regulation ("FAR") Part 135 air carrier operations.'" He also refutes the County's position the TUPs do not apply to charterers because they do not operate at the terminal. The County did not produce or log this memorandum to Mr. Schlactus or any communications attaching it. On March 15, 2019, Mr. Schlactus was sent a second memorandum from the County Attorney, which was also withheld.

---

[1] Parties exchanged multiple emails and then met and conferred on February 23, 2023, before submitting this letter.

146377972v1



Any memoranda provided to Mr. Schlactus or communications with him are not privileged. First, the email was sent in his individual capacity addressing his personal concerns. Moreover, Joan McDonald, Westchester's Director of Operations and the County's Rule 30(b)(6) witness, testified the County's counsel represents only the County. Further, to the extent the County contends §158.11(2) of its laws automatically creates an attorney-client privilege with all boards, any privilege is fact-specific, and this is insufficient to carry Defendant's burden to prove privilege. Moreover, the County has failed to establish these communications were intended to be and were in fact kept confidential. *Church & Dwight Co. Inc. v. SPD Swiss Precision Diag., GmbH*, No. 14-CV-585, 2014 WL 7238354, at *1 (S.D.N.Y. Dec. 19, 2014). All AAB meetings are open to the *public*. The TUPs application to charterers was listed as a *public* agenda item at AAB meetings in Fall 2018, and a corresponding resolution was publicly circulated. The memoranda at issue are responses to these *public* agenda items. Further, on March 31, 2019, Mr. Schlactus publicly discussed on a podcast what appears to be information provided in the memoranda, including the TUPs applicability to non-airlines such as charter companies, the history of the TUPs, and the grandfathering of the TUPs. *See* [Audiobook Earth +30.](#)

Nor was Mr. Schlactus obtaining or providing legal advice because, as several County and AvPorts witnesses testified, the AAB has no decision-making authority and is an "independent" entity.[2] The AAB is simply "a liaison among municipalities, groups, citizens, and airport management, assessing present and future airport needs and assuming responsibilities in the areas of public information and education."

And even if the communications were privileged originally, any privilege was waived. Mr. Schlactus is a third party, held several roles unrelated to the County, and was not a County

---

[2] If the Court wishes, Plaintiffs can submit supporting deposition testimony.



employee or official. *Church & Dwight*, 2014 WL 7238354, at *4. Additionally, the at issue-doctrine applies. *U. S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). In response to Plaintiffs' contentions the TUPs do not and were never intended to apply to their operations, the County claims the law always applied to Plaintiffs and is grandfathered under ANCA. The subject memoranda, however, appears to show the opposite, establishing the County's grandfather defense as pretextual. Likewise, in defense to Plaintiffs' estoppel/waiver defenses, the County claims it lacked knowledge that JetSmarter, XO, and Blade had been operating in their current manner since at least 2015. The County has put its knowledge at issue, which the subject memoranda contradict. *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637 (S.D.N.Y. 2019).

Finally, as to the County's untimeliness contention, it was the County that insisted key depositions, including Nicholas Hartman, the AAB chairman, and Ms. McDonald, be taken the last week and even the last day of discovery. Plaintiffs needed to depose these witnesses to evaluate privilege. The first memorandum was also not logged, which contributed to this timing.

**II.  The County Must Produce Documents Concerning the Privatization of HPN.**

In 2016, the County issued an RFP for "a Public-Private Partnership" for the lease and management of the airport. Among other things, the RFP required all bidders to include a statement that they would comply with federal and local law, including the TUPs. Proposals also had to outline how the bid would meet the County's goals, one of which was to "preserve the quality of life of the surrounding communities" while "abiding by current terminal use restrictions . . . ."

Any proposals to the County's privatization RFP, and the County responses are relevant and responsive to Plaintiffs' RFP Nos. 2 and 11.  These privatization proposals would have detailed airport operations, including charter operations, and any response from the County is likely to reflect its knowledge of Plaintiffs' operations and the TUPs applicability to those operations.



## The County's Position

Despite Plaintiffs' assertions, the County's privilege log is complete. Mr. Schlactus received a February 28, 2019 e-mail summarizing the conclusions of a memorandum authored by the County's outside aviation counsel. Schlactus never received the memorandum itself; regardless, both this e-mail (DOC ID 971068) and the memorandum to which it refers (DOC ID 930196) were included in the County's privilege log, which was produced to Plaintiffs on December 22, 2022. Additionally, the County's privilege log includes the March 15, 2019 memorandum from the County Attorney that Plaintiffs reference above (DOC ID 921989).

Turning to Plaintiffs' privilege argument, the fact that Mr. Schlactus corresponded with the County Attorney's office "from his private Gmail account" matters not; Mr. Schlactus lacks an official Westchester e-mail address for the simple reason that he is not a Westchester County employee. Privilege nevertheless applies to communications between the County Attorney and Mr. Schlactus in his capacity as chair of the Westchester County Airport Advisory Board ("AAB"), a statutory County body. *See generally* WEST. CTY. CODE § 277.221.[3] Notably, the County Attorney's office represented the new chair of the AAB – who is likewise not a Westchester County employee – at his recent deposition, without objection from Plaintiffs.

That Mr. Schlactus belongs to other bodies with overlapping interests does not destroy the privilege; indeed, Plaintiffs' counsel Paul Noto is himself a member of the Rye Brook Airport Advisory Council together with Mr. Schlactus. In any event, Westchester only withheld communications in which Mr. Schlactus was acting as chair of the Westchester AAB. Where he

---

[3] Section 158.11(2) of the County Code, in turn, makes the County Attorney the "legal advisor to ... each and every board, body, commission or officer of the County of Westchester." Nothing in the deposition testimony of Joan McDonald suggests otherwise.



was clearly acting in another capacity, or where the privilege chain was broken (*i.e.*, where outside parties such as Rye Brook were copied), the County did not assert privilege.

Plaintiffs argue that privilege cannot attach to communications with Mr. Schlactus because "the AAB has no decision-making authority." There is no legal support for this argument, but regardless, the fact that the AAB "has no decision-making authority" demonstrates why these documents are not even *relevant* – "Plaintiffs' contentions [that] the TUPs do not and were never intended to apply to their operations" are *legal* contentions, and cannot be refuted or supported by Mr. Schlactus' lay opinion or advice. It is for the Court to determine whether the TUPs apply to Plaintiffs' operations; Schlactus' position on this issue is ultimately irrelevant.

Also irrelevant are any documents concerning the proposed privatization of the County Airport, an event that predated the instant litigation by six years. While such documents may generally reference "charter operations," Plaintiffs have no basis to assume that they included any discussion of *their* operations, let alone "the TUP's applicability to those operations."

Moreover, the County timely objected to Plaintiffs' RFP Nos. 2 and 11 (neither of which mentioned the 2016 Airport privatization proposal) on the grounds that both were overly broad and not proportional to the needs of this case. Plaintiffs waited more than four months, and until after the close of fact discovery, to contest this. That depositions were scheduled right up to the end of fact discovery is due entirely to two things: Plaintiffs' delays in producing documents, and Plaintiffs' insistence on deposing so many witnesses in a case with virtually no fact disputes. Respectfully submitted,

  /s/ Samrah R. Mahmoud                              /s/ David H. Chen
Samrah R. Mahmoud (admitted *pro hac vice*)         David H. Chen

cc: Counsel of Record (via CM/ECF)