Troutman Pepper Hamilton Sanders LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
troutman.com



May 5, 2023 (**VIA ECF**)
Honorable Philip M. Halpern
300 Quorropas Street
White Plains, New York 10601-4150

*Re: Delux Public Charter, LLC, et al. v. County of Westchester, et al.* (**Index No. 22-cv-01930**)

Dear Judge Halpern:

As the Rule 56.1 Statement shows, there are many disputed material facts preventing summary judgment on any of Plaintiffs' claims, much less all of them.  To highlight a few:

- *ANCA*: Whether (a) the 2004 TUPs were attempting to regulate activity outside the Terminal, (b) the FAA broadly approved the County restricting Plaintiffs' access to the Airport, and (c) the 2005 TUPs and then Policy No. 1 were mere clarifications that did not "reduce or limit" Plaintiff's aircraft operations.
- *ADA*:  Whether the 2005 TUPs affect Plaintiffs' (a) rates, (b) routes or (c) services, and if so, whether those regulations were the County acting under the "proprietary" exception.
- *Equal Protection*: Whether the various comparators are in fact such, and whether there is a rational basis for the access restrictions placed on Plaintiffs.

As the Court's Rules explicitly acknowledge, summary judgment in a non-jury case is "ordinarily" not appropriate.[1]  Nothing makes this case any different.  The County should not be permitted to file a motion that will merely waste the Court's and the parties' resources only to prolong the inevitable.  The case should proceed to trial.

### Airport Noise and Capacity Act ("ANCA")

The County has admittedly not complied with ANCA.  ANCA preempts noise or access restrictions on Stage 3 aircraft not in effect on October 1, 1990 unless agreed to by all aircraft operators or approved by the DOT.[2]  49 U.S.C. § 47524(c); *see also Friends of E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F. 3d 133, 152 (2d Cir. 2016) (compliance with Part 161

---

[1] Plaintiffs have a right to jury trial on the Equal Protection Claim but will waive it.
[2] The County evidently concedes the TUPs as to Plaintiffs are "noise or access restrictions".

152481067v1



procedures mandatory). The County did not comply with Part 161; instead, the County claims it is entitled to summary judgment on the theory the TUPs were "grandfathered" under ANCA. *See* 49 U.S.C. § 47524(d)(4) (ANCA does not apply to "subsequent amendment to an airport noise or access agreement or restriction in effect on November 5, 1990, that does not reduce or limit aircraft operations or affect aircraft safety"). The County is wrong as the facts needed to decide whether the 2005 TUPs were grandfathered are disputed.

The TUPs were originally passed in 2004. Notably, the 2004 TUPs did not attempt to regulate operations outside of the Terminal at all, a fact which is disputed. (Cnty's Facts 32, 33, 35; Plfs' Counterstatement of Facts ("COF") 6.) It was further limited only to scheduled carrier operations, another fact which the County disputes, despite that federal regulations state Plaintiffs' services are non-scheduled. (Cnty's Facts 32, 40-41, COF 7.) The County submitted these 2004 TUPs to the FAA (although not under the Part 161 procedures) for comment. Although all the FAA said in an informal response letter was that three specific and irrelevant restrictions at the Terminal were grandfathered under ANCA and met the Grant Assurances, the County claims a much broader review and approval of the 2004 TUPs.[3] (Cnty's Facts 33-37.) The scope and effect of the FAA letter are the first factual disputes for the trier of fact on the ANCA claim.

Moreover, in 2005 the County amended the TUPs to force all "Passenger Service" – including, as the County now claims *sub silentio*, Part 380 operations like Plaintiffs – to the Terminal. The County, however, never submitted the 2005 TUPs to the FAA. The County claims now it didn't because the 2005 TUPs were a mere "clarification" that did not reduce or limit aircraft operations at HPN. Plaintiffs disagree and assert the 2005 TUPs do in fact "reduce or limit" their federally-approved aircraft operations at HPN. Similarly, the Parties dispute whether Policy No. 1, which for the first time expressly referenced Part 380 carriers and created a "Single Seat Charter

---

[3] As an initial matter, it is highly debatable whether this letter is admissible or entitled to any deference. *See Tweed-New Haven Airport Auth. v. Town of East Haven*, 582 F. Supp. 2d 261, 268 (D. Conn. 2008) (letter from Asst. Chief Counsel of FAA stating opinion on preemption inadmissible hearsay and not entitled to deference).



Operator" category, further reduces or limits aircraft operations. (Cnty's Facts 45-49, 54-56, COF 11, 13-15.)  These factual disputes must also be adjudicated at trial to resolve the County's "grandfathering" defense.  Plaintiffs' ANCA claim therefore cannot be summarily adjudicated.

## Airline Deregulation Act ("ADA")

Similarly, summary judgment cannot be granted as to Plaintiffs' ADA Claim, as there are several factual disputes.  First, the Parties dispute whether Policy No. 1 and the County's interpretation of the TUPs "relate[s] to a price, route or service of [Plaintiffs]" and are therefore preempted by the ADA, 49 U.S.C. § 41713(b)(1).  (*See* Cnty's Fact 64; COF 12-17 (establishing Policy No.1 and TUP not only relate to but destroy Plaintiffs' federally-authorized services).)

Second, there are factual disputes as to the proprietary exception.  This exception provides a "narrow" right "vesting the proprietor 'only with the power to promulgate reasonable, nonarbitrary and non-discriminatory regulations that establish acceptable noise levels for the airport and its immediate environs.' . . . Moreover, such regulations must be 'consistent with federal policy; other, noncomplementary exercises of local prerogative are forbidden.'" *Friends of E. Hampton*, 841 F.3d at 139.  Further, noise restrictions that do not comply with ANCA's procedural requirements are by "their nature, unreasonable and arbitrary." *Id.* at 153-54.

The County's only facts related to its ADA claim relate to out-of-context determinations by the FAA related to Grant Assurances, not the ADA, and are limited to the 2004 TUPs, not the 2005 Amendment or Policy No. 1.  (Cnty's Facts 61-64.)  The County has provided no rationale for Policy No. 1 or its TUP interpretation, let alone any evidence it would alleviate a specific noise concern (as that would likely then violate ANCA).  *See Friends of E. Hampton*, 841 F.3d at 139.  Plaintiffs also included several material disputed facts to establish the law is arbitrary, unreasonable, and discriminatory.  (*See* COF 12-23.)  This claim must therefore be tried.

## Equal Protection

There are also factual disputes as to Plaintiffs' Equal Protection claim.  Such a claim lies where plaintiffs have been "intentionally treated differently from others similarly situated and



that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Whether entities are similarly situated is generally a question of fact that cannot be decided as a matter of law unless no reasonable jury could find for the plaintiffs. *See Kirschner v. Zoning Bd. of Appeals of Inc. Vill. of Valley Stream,* 924 F. Supp. 385, 394 (E.D.N.Y. 1996) (denying summary judgment on Equal Protection claim); *see also Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 n.2 (2d Cir. 2001) ("As a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury").

Here, Plaintiffs have set forth many disputed facts regarding others similarly situated to Plaintiffs but are allowed to operate from FBOs or private hangars while the County attempts to force Plaintiffs to the Terminal.  *See* (Cnty's Facts 68-72, 74, 76-77, 83; COF 4, 18-23, 29.)  For instance, Plaintiffs have provided evidence, which the County disputes, that entities like Bakers Bay, Yellowstone Mountain Club, Nexus Club, and Albany Club, sell seats to a segment of the public on aircraft designed for more than 9 seats from an FBO with no County limits on the number of flights or passengers.  (Cnty's Facts 68-69, 71; COF 18, 20.)  Likewise, the parties dispute whether Tradewind, a Part 135 carrier selling seats to the public and operating from an FBO, utilizes aircraft designed for more than nine seats.  (Cnty's Fact 68.)  They also dispute whether entities like Flex Jet, NetJets, and Wheels Up, who are allowed to operate from FBOs or private hangars, sell seats to those who pay an applicable fee or operate aircraft designed for more than nine seats.  (Cnty's Facts 72, 74.)  And the parties dispute whether Part 135 flights chartered by public individuals who come together, for instance through a flight aggregating website, involve the sale of seats to the public.  (Cnty's Fact 72.)  Likewise, the parties dispute whether those carriers selling seats to the public on aircraft designed for less than nine seats are similarly situated.  (Cnty's Facts 68, 83; COF 4.)[4]

Further, the parties dispute whether the County's differential treatment of Plaintiffs is

---

[4] The County's attempt to rely on a motion to dismiss opinion in a California case involving an entirely different regulation and different comparators, is likewise unpersuasive.



without rational basis.  (Cnty's Facts 82-83, COF 21-23.)  The County fails to provide any rational reason why Plaintiffs must operate from the Terminal while other similarly situated carriers can operate from FBOs or private hangars.  (COF 21-23.)  Indeed, the County has failed to provide any supported reason to force Plaintiffs to the Terminal. (COF 4, 17.)  Moreover, requiring Plaintiffs to operate from the Terminal not only destroys Plaintiffs' services but leads to more Terminal traffic and more flights, facts which the County disputes.  (COF 22-23.)

### Defenses (Estoppel, Waiver, Laches)

Finally, summary judgment cannot be granted on Plaintiffs' estoppel, waiver, and laches defenses.  First, these defenses can be pursued against a government.  *Cayuga Indian Nation of N.Y. v. Pataki,* 413 F.3d 266, 278 (2d Cir. 2005) (applying laches to government; defense allowed where no statute of limitations or where government seeks to enforce right akin to a private one); *Corniel-Rodriguez v. Immigr. & Naturalization Serv.*, 532 F.2d 301, 305 (2d Cir. 1976) (estoppel where otherwise "manifest and gross injustice."); *State of New York v. United Parcel Serv.*, Inc., 160 F. Supp. 3d 629, 649 (S.D.N.Y. 2016) (allowing waiver and estoppel).

Second, these defenses present factual disputes.  Waiver exists where a party through acts or words "relinquished a right with both knowledge of the existence of the right and an intention to relinquish it."  *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir. 1983) (denying summary judgment on waiver).  And "[t]he equitable defense of laches bars an equitable claim where the plaintiff has unreasonably and inexcusably delayed, resulting in prejudice to the defendant."  *Allens Creek/Corbetts Glen Pres. Grp., Inc. v. West*, 2 F. App'x 162, 164 (2d Cir. 2001).  Estoppel lies where the government commits affirmative misconduct, like failing to provide necessary warnings, that prejudices a party.  *Corniel*, 532 F.2d at 306.  As to all of these, the County's knowledge of Plaintiffs' operations; its conduct justifiably indicating to Plaintiffs the County allowed their services from FBOs, including the County's role in approving Blade's Million Air lounge development; and the severe prejudice to Plaintiffs are disputed facts to be tried.  *See* (Cnty's Facts 5-14, COF 12-15, 24-32.)

**Honorable Philip M. Halpern**
May 5, 2023 (VIA ECF)
Page 6



Respectfully submitted,

Steven D. Allison (admitted *pro hac vice*)
Samrah R. Mahmoud (admitted *pro hac vice*)

cc: Counsel of Record (via CM/ECF)

152481067v1