

Application for a pre-motion conference granted. A conference is scheduled for 6/29/2023 at 12:00 p.m. to be held in Courtroom 520 of the White Plains courthouse. The Court grants an enlargement to 27 pages of the page limitations for the Rule 56.1 Statement.

SO ORDERED.

_____

Philip M. Halpern
United States District Judge

Dated:  White Plains, New York
        May 8, 2023

April 10, 2023

**VIA ECF**

Hon. Philip M. Halpern, U.S. District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:     Letter Motion for Pre-Motion Conference (Rule 56 Motion)
        *Delux Public Charter, LLC. et al v. County of Westchester*, No. 22-cv-1930

Dear Judge Halpern,

        In accordance with Rules 2(C) and 4(E)(vii) of the Court's Individual Practices in Civil Cases, the County of Westchester ("Westchester" or "the County"), defendant in the above-captioned case, respectfully requests a pre-motion conference in advance of its proposed motion for summary judgment.  A document containing Westchester's Local Rule 56.1 Statement and the Plaintiffs' responses thereto is attached to this letter-motion.

        In the alternative, given that the parties addressed summary judgment at our March 27, 2023 case management conference, Westchester respectfully requests that the Court forego a formal pre-motion conference and simply set a briefing schedule for the proposed motion.

### Anticipated Rationale for Westchester's Proposed Motion

        Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "Even if the parties dispute material facts, summary judgment will be granted unless the dispute is 'genuine,' *i.e.*, unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 200 (2d Cir. 2004) (citation omitted).

**Office of the Westchester County Attorney**
**148 Martine Avenue, 6th Floor**
**White Plains, New York 10601**       (914) 995-2690       www.westchestergov.com



Here, Plaintiffs assert three claims, sounding in, respectively: (1) the Airport Noise and Capacity Act ("ANCA"); (2) the Airline Deregulation Act ("ADA"); and (3) the Equal Protection clause of the Fourteenth Amendment.   (*See generally* Compl. ¶¶ 101–150.)  The bases for judgment as a matter of law on each claim are set forth below.  Westchester also seeks judgment as a matter of law on its counterclaim, *i.e.*, a declaration that Plaintiffs must comply with applicable local laws at the Westchester County Airport.  (*See generally* Ans. ¶¶ 158–212.)

I.    ANCA

Plaintiffs allege that Section 712.462 of the Westchester County Municipal Code, also known as the Terminal Use Procedures ("TUPs"), is "contrary to and interferes with ... ANCA," a 1990 federal law that bars certain local noise and access restrictions at the nation's airports. (Compl. ¶ 104.)  It is uncontested, however, that prior to the TUPs codification, the Federal Aviation Administration ("FAA") determined that "the proposed County actions are exempt from ... ANCA since the actions relate to airport noise or access restrictions that were in effect on November 5, 1990 and would not reduce or limit aircraft operations or affect aircraft safety."  In other words, unlike many local airport laws, the Westchester TUPs were deemed "grandfathered" by the very federal agency responsible for enforcing ANCA.  There is accordingly no preemption issue, as Plaintiffs claim.  (Compl. ¶ 103.)

Plaintiffs will argue that a 2005 amendment to the TUPs forfeited this "grandfather" status, but it is undisputed that the FAA itself has never taken this position.  Indeed, ANCA specifically permits the amendment of "grandfathered" local statutes, so long as they do not "reduce or limit aircraft operations."  *See* 49 U.S.C. § 47254(d)(4).  And while Plaintiffs may argue that the 2005 amendment to the TUPs had the effect of "limiting" their aircraft operations, this is a dispute of law, not fact, and is therefore ripe for resolution via summary judgment.

2

## II. ADA

Plaintiffs allege that the TUPs are "contrary to and interfere with ... the ADA," a federal law that preempts state and municipal laws which regulate the prices, routes, or services of air carriers. (Compl. ¶ 120.) It is uncontested, however, that the TUPs do not even purport to regulate prices, routes, or services. As relevant here, the TUPs merely require any air carrier selling seats to the public on larger aircraft (those with more than nine passenger seats) to operate from the Airport's commercial terminal, as opposed to one of the Airport's privately-run Fixed-Base Operators ("FBOs"). The ADA's preemption provision does not limit local governments from enforcing their proprietary rights at airports in such a manner. *See* 40 U.S.C. § 41713(b).

Plaintiffs allege that because the Airport's commercial terminal is a Security Identification Display Area ("SIDA"), and because TSA regulations prohibit the mingling of SIDA-screened and non-SIDA-screened passengers, the TUPs effectively regulate their routes by preventing them from operating between Westchester and non-SIDA airports. (Compl. ¶ 80.) It is uncontested, however, that Westchester offered Plaintiffs a dedicated, non-SIDA location within the terminal from which to operate. Plaintiffs spurned this offer—not for any regulatory reason,[1] but simply because operating out of a commercial airline terminal does not comport with their preferred business model, which targets high-end customers willing to pay a premium for passenger service. In sum, the TUPs fall squarely within the ADA's well-established "proprietary right exception," and the FAA has never indicated otherwise in the nearly two decades since the TUPs were codified. Plaintiffs disagree with the scope of Westchester's proprietary rights (*see* Compl. ¶¶ 77–79), but this is also a dispute of law, not fact.

---

[1] The Transportation Security Administration's ("TSA's") Federal Security Director for the region that includes Westchester specifically reviewed, and approved, Westchester's proposal.

### III.     Equal Protection

Finally, Plaintiffs allege that Westchester's attempt to enforce its TUPs violates the U.S.
Constitution, claiming that the County "acted irrationally and arbitrarily with the sole intent of
discriminating against Plaintiffs and preventing them from operating at HPN."  (Compl. ¶ 145.)
This allegation is partially belied by the Complaint itself, which reveals that two of the Plaintiffs
have been operating at HPN since 2015.  (Compl. ¶¶ 26, 29.)  It is further belied by the County's
January 2022 "Public Charter Operational Policy # 1," which set forth a way for Plaintiffs to
continue operating at HPN in full compliance with the TUPs.  (*See* Dkt. Entry 52-2, at 2.)

Plaintiffs allege that they are being discriminated against in favor of "other similarly
situated carriers."[2]  (Compl. ¶ 140.)  This phrase is telling, because for Equal Protection
purposes, Plaintiffs are a "class of one."  Discovery has revealed that while there may be *similar*
air carriers at HPN, there are no other carriers that are "*prima facie* identical," *Eldars v. State
Univ. of N.Y.*, 2021 U.S. App. LEXIS 30213, at *8 (2d Cir. Oct. 8, 2021)—*i.e.*, Part 380 carriers
who are selling seats to the public on aircraft with more than nine passenger seats, which operate
from FBOs instead of the terminal.  Only that precise scenario violates the TUPs, and none of the
competitor airlines identified at Plaintiffs' 30(b)(6) depositions fit the bill.  In other words,
Plaintiffs were "singled out" (Compl. ¶ 128) only insofar as they are the only Part 380 carriers
currently violating Westchester's TUPs.

A recent decision from a California district court is instructive on this "class of one"
point.  There, Delux Public Charter, LLC/JSX brought a remarkably similar complaint against a
local airport, sounding in ANCA, the ADA, and the Equal Protection clause.  *See generally
Delux Public Charter, LLC v. Cty. of Orange*, 2022 U.S. Dist. LEXIS 153219 (C.D. Cal. July 29,

---

[2] The Complaint itself does not actually identify any "similarly situated carriers."

2022).  In dismissing the Equal Protection claim, the court noted that JSX's business model is "materially different" from its "alleged similarly situated comparators," citing JSX's own factual allegations.  *See id.* at \*27.

It is worth noting that JSX's similar California complaint was dismissed on the pleadings, further indicating that the instant case is ripe for summary judgment.  And although Plaintiffs will undoubtedly argue that there are factual disputes at bar which should preclude summary judgment, a careful reading of the attached Local Rule 56.1 Statement reveals that none of these disputes are actually material.[3]

For example, the dispute over precisely when the County realized that Plaintiffs were operating in violation of the TUPs is relevant only to Plaintiffs' equitable defenses of waiver, estoppel, and laches—and such defenses "cannot be invoked against a governmental agency to prevent it from discharging its statutory duties."  *N.Y. State Med. Transporters Ass'n v. Perales*, 77 N.Y.2d 126, 130 (N.Y. 1990).  Plaintiffs also point to disputes over various Westchester employees' understanding of the TUPs, but these are similarly immaterial—Plaintiffs are either violating, or not violating, the TUPs, which are either federally preempted, or not.  These are quintessential questions of law, which may be adjudicated at summary judgment.

We thank the Court for its time and consideration.

Sincerely,

/s/ **David H. Chen**
Deputy County Attorney
*Counsel for Defendant*

cc:        All counsel (via ECF)

---

[3] Westchester's Rule 56.1 Statement was under 25 pages, per the Court's individual rules.  Plaintiffs' 11 pages of "Additional Material Facts" have pushed the combined Statement over the page limit, however.