UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DELUX PUBLIC CHARTER, LLC
 d/b/a JSX AIR and JETSUITEX, INC.;

XO GLOBAL, LLC; and

BLADE URBAN AIR MOBILITY, INC.,

                Plaintiffs,

- vs -

COUNTY OF WESTCHESTER,

                Defendant.

Civil Action No.
22-CV-01930 (PMH)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF COUNTY OF WESTCHESTER'S MOTION FOR SUMMARY JUDGMENT

Date:   White Plains, New York
         November 30, 2023

**JOHN M. NONNA**
Westchester County Attorney
*Attorney for Defendants*
Michaelian Office Building
148 Martine Avenue, Room 600
White Plains, New York 10601

Sean T. Carey (SC8804)
Associate County Attorney, of Counsel

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii
NOTE ON DEFINED TERMS ....................................................................................................... 1
DISCUSSION ................................................................................................................................. 1
    I.    ADA Preemption Claim .................................................................................................... 1
        A.    ADA's Proprietor Exception ............................................................................... 1
        B.    ADA's Express Preemption Provision ............................................................... 3
    II.    ANCA Preemption Claim ................................................................................................ 3
        A.    2004 TUP ............................................................................................................ 3
            1.    The 2004 TUP's Use of the Term "Scheduled" ..................................... 3
            2.    The 2004 TUP's Non-Use of the Term "Part 380" ................................ 5
        B.    2005 Amendment ............................................................................................... 6
    III.    Equal Protection Claims .................................................................................................. 6
        A.    Comparators ....................................................................................................... 6
        B.    Rational-Basis Review ....................................................................................... 8
    IV.    Plaintiffs' Equitable Defenses ......................................................................................... 9
        A.    Non-Laches Equitable Defenses ........................................................................ 9
        B.    Laches ................................................................................................................. 9
CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**CASES**

*Aircraft Owners & Pilots Ass'n v. Port Auth. of N.Y.*,
   305 F. Supp. 93 (E.D.N.Y. 1969) ................................................................................. 1

*British Airways Bd. v. Port Auth. of N.Y. & N.J.*,
   558 F.2d 75 (2d Cir. 1977) ..................................................................................... 1, 2

*Burlington Northern & Santa Fe Railway Co. v. White*,
   548 U.S. 53 (2006) ..................................................................................................... 4

*Cayuga Indian Nation v. Pataki*,
   413 F.3d 266 (2d Cir. 2005) ...................................................................................... 9

*City of Burbank v. Lockheed Air Terminal*,
   411 U.S. 624 (1973) ................................................................................................... 1

*City of New York v. FedEx Ground Package Sys.*,
   314 F.R.D. 348 (S.D.N.Y. 2016) ............................................................................... 9

*Constant v. Prack*,
   No. 16-CV-3985 (PMH),
   2022 WL 917528, 2022 U.S. Dist. LEXIS 57435 (S.D.N.Y. Mar. 29, 2022) .......... 9

*Eldars v. State Univ. of N.Y.*,
   Nos. 20-2693 (Lead), 20-4255 (Con),
   2021 WL 4699221, 2021 U.S. App. LEXIS 30213 (2d Cir. Oct. 8, 2021) ............. 6

*Friends of E. Hampton Airport, Inc. v. Town of E. Hampton*,
   841 F.3d 133 (2d Cir. 2016) ...................................................................................... 1

*Harlen Assocs. v. Incorporated Village of Mineola*,
   273 F.3d 494 (2d Cir. 2001) .................................................................................. 6, 7

*Heller v. Doe*,
   509 U.S. 312 (1993) ................................................................................................... 8

*Hu v. City of New York*,
   927 F.3d 81 (2d Cir. 2019) ........................................................................................ 6

*Marom v. Town of Greenburgh*,
   No. 20-CV-3486 (PMH),
   2022 WL 17584279, 2022 U.S. Dist. LEXIS 223746 (S.D.N.Y. Dec. 12, 2022) ... 9

*Midway Airlines, Inc. v. County of Westchester*,
   584 F. Supp. 436 (S.D.N.Y. 1984) ....................................................................... 2, 4

*Nat'l Helicopter Corp. of Am. v. City of New York*,
   137 F.3d 81 (2d Cir. 1998) ..................................................................................... 1, 2

*Progressive Credit Union v. City of New York*,
   889 F.3d 40 (2d Cir. 2018) ........................................................................................ 6

*Sensational Smiles, LLC v. Mullen*,
   793 F.3d 281 (2d Cir. 2015) ...................................................................................... 8

*United States v. Angell*,
  292 F.3d 333 (2d Cir. 2002) ..................................................................................................9

*Util. Air Regulatory Group v. EPA*,
  573 U.S. 302 (2014) ..............................................................................................................5

*Western Air Lines, Inc. v. Port Authority of N.Y. & N.J.*,
  658 F. Supp. 952 (S.D.N.Y. 1986),
  *aff'd* 817 F.2d 222 (2d Cir. 1987) .....................................................................................1, 2

*Western Air Lines, Inc. v. Port Authority of N.Y. & N.J.*,
  817 F.2d 222 (2d Cir. 1987) ..................................................................................................2

**STATUTES**

49 U.S.C. § 47524 ..........................................................................................................4, 6

**REGULATIONS**

14 C.F.R. § 110.2 .................................................................................................................4

14 C.F.R. § 119.3 .................................................................................................................4

14 C.F.R. § 161.3 .............................................................................................................4, 6

14 C.F.R. § 212.5 .................................................................................................................7

14 C.F.R. Part 91, Subpart K ...............................................................................................7

**OTHER AUTHORITIES**

50 Fed. Reg. 23,941 (June 7, 1985)
  (codified at SFAR 38-2 (14 C.F.R. parts 121, 125, 127, 128, and 135)) ..............................4

60 Fed. Reg. 65,832 (Dec. 20, 1995) ...................................................................................4

76 Fed. Reg. 7,482 (Feb. 10, 2011) .....................................................................................4

**NOTE ON DEFINED TERMS**

The County hereby incorporates all of the defined terms set forth in its earlier memorandum. That memorandum—*i.e.*, the Memorandum of Law in Support of the County's Motion for Summary Judgment—is referred to herein as the "Support Brief" or "Supp Br." Plaintiffs' opposition memorandum is referred to herein as the "Opposition Brief" or "Opp'n Br."

**DISCUSSION**

I. <u>ADA Preemption Claim</u>

    A. *ADA's Proprietor Exception*

In the Opposition Brief, Plaintiffs misidentify the source of the County's proprietary rights—building a fundamentally unsound argument based on that error. *See* Opp'n Br. at 9–12. The *actual* source of the County's proprietary rights over HPN is its ownership. *See City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 635 n.14 (1973); *British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 558 F.2d 75, 84–85 (2d Cir. 1977). Absent preemption, the County would have all the powers of a municipal owner vested also with police powers. *See City of Burbank*, 411 U.S. at 635 n.14; *British Airways Bd.*, 558 F.2d at 84–85; *see also Aircraft Owners & Pilots Ass'n v. Port Auth. of N.Y.*, 305 F. Supp. 93, 106 (E.D.N.Y. 1969). While preemption may narrow the scope of the County's power in certain circumstances, it has not foreclosed it; municipal corporations retain certain powers and rights under Congress's plan of divided authority. *See Friends of E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 152 n.18 (2d Cir. 2016); *Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 88 (2d Cir. 1998). Decisional law plays an essential role in triangulating the metes and bounds of the powers and rights reserved to municipalities. *See, e.g.*, *Nat'l Helicopter*, 137 F.3d at 89–92; *Western Air Lines, Inc. v. Port Authority of N.Y. & N.J.*, 658 F. Supp. 952, 956–60 (S.D.N.Y. 1986), *aff'd* 817 F.2d 222 (2d Cir. 1987).

Plaintiffs ignore this scheme and instead reason that decisional law exclusively controls the powers with which the County is vested. *See* Opp'n Br. at 9–12. This misinterprets the Second Circuit's

1

holding that "the proprietor exception allows municipalities to promulgate 'reasonable, nonarbitrary and non-discriminatory' regulations of noise and other environmental concerns at the local level," *see Nat'l Helicopter*, 137 F.3d at 88 (quoting *British Airways Bd.*, 558 F.2d at 88), taking it to mean that proprietors may act only to resolve such issues, nothing more. Opp'n Br. at 9, 11–12. This conclusion is not merely illogical, it has already been considered and rejected:

> The cases do not reject the existence of other proprietary interests, but merely seek to [e]nsure that when such an interest exists, such as the control of noise, the proprietor not regulate beyond the scope of that interest.
>
> As these cases make plain, although questions of permissible noise regulation predominate in the courts, other proprietor-imposed regulations are 'presently accepted as valid exercises of proprietary powers.' A proprietor's interest in regulating ground congestion at its airports would appear to be at the core of the proprietor's function as airport manager, perhaps even more so than the regulation of noise; . . . .

*Western Air Lines*, 658 F. Supp. at 956–57, *aff'd* 817 F.2d at 226 (2d Cir. 1987) ("Turning to the merits, we affirm on the basis of Judge Cannella's well-reasoned opinion, to which we refer the reader . . . .").

Through the distorted prism identified above, Plaintiffs also view *Midway's* holding as "relati[ng] only to a preliminary injunction," permitting only "the study [that] was to be conducted consistent with local environmental and safety needs," and embracing only "Part 121 air carriers." Opp'n Br. at 10–11 (emphasis omitted). This restricted reading of *Midway* intentionally ignores that:

> [t]he legislative history is unmistakably clear that Congress did not intend that the preemptive force of [the ADA's Express Preemption Provision] would interfere with 'long recognized powers of the airport operators to deal with noise and other environmental problems at the local level.' The other federal aviation statutes relied upon by Midway and plaintiff intervenors must be construed in light of Congress's recognition of the legitimate needs of local airport proprietors to ensure the safety of passengers while on the ground.

*Midway Airlines, Inc. v. County of Westchester*, 584 F. Supp. 436, 440 n.18 (S.D.N.Y. 1984) (citations omitted); *see also Western Air Lines*, 658 F. Supp. at 957 (quoting same). Plaintiffs' reading also ignores the *Midway* court's holding that the County is "entitled . . . to a reasonable period in which to . . . implement rational, nondiscriminatory rules governing airport access." *Midway*, 584 F. Supp. at 441.

2

Similarly, Plaintiffs erroneously seek to cabin the FAA Letter's holding to the 2004 TUP and to ANCA compliance. *See* Opp'n Br. at 10. Rather than repeat itself, the County respectfully refers the Court to the Support Brief for a fulsome discussion of same. Supp. Br. § I(B)(1) at 5–6.

Plaintiffs also *suggest* that the TUPs are not "reasonable, nonarbitrary and non-discriminatory." *See* Opp'n Br. at 9, 12. The County disagrees and again refers the Court to the Support Brief for a fulsome discussion of same. Supp. Br. § I(B)(1) at 5–6.

B.   *ADA's Express Preemption Provision*

With respect to the ADA's express preemption provision, the arguments set forth in the Support Brief fully address those issues raised by Plaintiffs, and the County stands on those arguments. *See* Supp. Br. § I(B)(2) at 7–8.

II.   ANCA Preemption Claim

A.   *2004 TUP*

While Plaintiffs claim they "seek no relief with regard to the 2004 TUP," they also claim that "the 2004 TUP did not . . . apply to Plaintiffs." Opp'n Br. at 2, 4. Together, these twin claims work a sleight of hand—implicitly placing the 2004 TUP's scope as not disputed and therefore beyond dispute. *See id.* In truth, the 2004 TUP *did* apply to Plaintiffs. *See* Discussion § II(A) (1)–(2), *infra*. And although the 2004 TUP is no longer operative, this is not an academic point; the 2004 TUP's scope is immediately relevant to the 2005 Amendment's scope and entitlement to ANCA grandfather status.

The County's refutation of Plaintiffs' claim regarding the 2004 TUP's scope involves two points: the term "scheduled" and the omission of the term "Part 380."

1.   **The 2004 TUP's Use of the Term "Scheduled"**

Plaintiffs insist that the 2004 TUP's use of the term "scheduled" necessarily excludes Part 380 operations. Opp'n Br. at 4–6. Plaintiffs base this claim upon the current definition of "scheduled operation" in Title 14 of the Code of Federal Regulations, which explicitly excludes "any passenger-

3

carrying operation that is conducted as a public charter operation under part 380." 14 C.F.R. § 110.2; *see also* Opp'n Br. at 4 n.15 (quoting same).

Plaintiffs' argument is misguided for four reasons. <u>First</u>, the 2004 TUP includes the terms "scheduled passenger service" and "scheduled passenger air service," not "scheduled operation." *See* Local Law No. 12-2004 at COW-859. Thus, there is a presumption that these have different meanings. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). <u>Second</u>, the 2004 TUP does not reference 14 C.F.R. § 119.3—*i.e.*, the actual citation for the regulatory definition of "scheduled operation" on the date the 2004 TUP was enacted. *See id.*; *see also* 76 Fed. Reg. 7,482, 7,484, 7,488 (Feb. 10, 2011) (establishing 14 C.F.R. § 110.2). <u>Third</u>, the 2004 TUP "closely followed the language that had been in use in various forms since **1984**," while the definition of "scheduled operation" was not amended to exclude Part 380 operations until **1995**. Local Law No. 17-2005 at COW-893 (emphasis added); 60 Fed. Reg. 65,832, 65,888 (Dec. 20, 1995) (establishing 14 C.F.R. § 119.3). Indeed, when the BOL agreed to the *Midway* stipulation, the regulatory definition of "scheduled operation" provided:

> "Schedule operations" means operations that are conducted in accordance with a published schedule for passenger operations which includes dates or times (or both) that is openly advertised or otherwise made readily available to the general public.

50 Fed. Reg. 23,941, 23,946 (June 7, 1985) (codified at SFAR 38-2 (14 C.F.R. parts 121, 125, 127, 128, and 135)). Plaintiffs have already conceded that "[t]he 2004 TUP was the codification of the settlement resulting from the *Midway* Litigation." Opp'n Br. at 3 n.10. Hewing tightly to the original language made particular sense, as slight deviations could have jeopardized the TUP's grandfather status. *See* 49 U.S.C. § 47524(d)(4); 14 C.F.R. § 161.3(b); *see generally* Briefing Materials COW-5766 to COW-5898 (evidencing in its breadth and detail the length to which the County went to confirm the TUP's grandfather status). <u>Fourth</u>, a mere fourteen months after the 2004 TUP was adopted, twelve of the seventeen legislators who did so explained that the terms "scheduled passenger service" and "scheduled passenger air service" were intended to mean "all commercial passenger service

4

operations, including . . . those now authorized under Part 380" while excluding "very small passenger aircraft – those with (9) seats or less." *Compare* Local Law No. 12-2204 at COW-849 (identifying the legislators who adopted the 2004 TUP), *with* Local Law No. 17-2005 at COW-892 (identifying the legislators who approved the report accompanying the 2005 Amendment), *and id.* at COW-894 to COW-895 (explaining the rationale behind the 2005 Amendment). Plaintiffs give the report short shrift. Opp'n Br. at 5–6. However, it is some of the best evidence we have today—nearly twenty years later—as to the meaning of the terms at issue. Looking at it in context, the 1984 definition clearly aligns with the legislative intent. *See Util. Air Regulatory Group v. EPA*, 573 U.S. 302, 319 (2014) (holding that, when construing terms, consistent usage "readily yields to context").

As evidenced by the foregoing, the 2004 TUP used the term "scheduled" to refer generally to operations conducted in accordance with a published schedule. The 2004 TUP would therefore apply to Plaintiffs and require them to use the Terminal. *See* 56.1 ¶¶ 3, 11–12, 15 & Resps.

### 2. The 2004 TUP's Non-Use of the Term "Part 380"

Plaintiffs repeatedly note that "[t]he 2004 TUP never referred to non-scheduled Part 380 operators." Opp'n Br. at 4, 6. However, the 2004 TUP specifically defines "Airline" as "including **but not limited to**, any air carrier or other operator certificated to provide scheduled passenger service under Parts 119, 121 or 135 of the Federal Aviation Regulations." Local Law No. 12-2004 at COW-859 (emphasis added).

Plaintiff Delux operates commercial flights pursuant to Part 135—which **is** specifically mentioned in the 2004 TUP. Compl. ¶ 15; Local Law No. 12-2004 at COW-859. The other two Plaintiffs, XO and Blade, partner with a Part 135 air carrier: Corporate Flight Management, Inc. d/b/a Contour Aviation. Complt. ¶¶ 3, 17, 19. Since the Part 135 operators with whom Plaintiffs partner *are* referenced in the 2004 TUP (*see* Local Law No. 12-2004 at COW-859), there is no cause to exclude them from the 2004 TUP's ambit.

5

B. *2005 Amendment*

As set forth above, the 2004 TUP applied to all scheduled passenger service—including Part 380 operators. *See* Discussion § II(A), *supra*. The 2005 Amendment simply clarified this point. *See* Local Law No. 17-2005 at COW-894 to COW-895. The 2005 Amendment is therefore a grandfathered use restriction. *See* Supp. Br. § II(A); 49 U.S.C. § 47524(d)(4); 14 C.F.R. § 161.3(b).

Plaintiffs also claim that the 2005 Amendment, even if valid, does not apply to them. *See* Opp'n Br. at 5, 6. However, the 2005 Amendment specifically defined "Passenger Service" to include individual seats sold by "a charterer." Local Law No. 17-2005 at COW-901. For this reason—and for the reasons set forth above, *see* Discussion § II(A)(2)—Plaintiffs' argument on this point is meritless.

III. <u>Equal Protection Claims</u>

A. *Comparators*

Plaintiffs argue that their comparators operate "*similar if not identical* aircraft" with "a *similar* noise profile, fly *similar* routes, and in many cases carry a *similar* number of passengers." Opp'n Br. at 24 (emphases added). Of course, mere "similarity" is insufficient; Plaintiffs must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves" such that they are "*prima facie* identical." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018); *Eldars v. State Univ. of N.Y.*, Nos. 20-2693 (Lead), 20-4255 (Con), 2021 WL 4699221, 2021 U.S. App. LEXIS 30213, at *7 (2d Cir. Oct. 8, 2021). The sole case cited by Plaintiffs in support of their equal protection argument predates the current heightened standard. *Compare* Opp'n Br. at 23–24 (citing *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494 (2d Cir. 2001)), *with Hu v. City of New York*, 927 F.3d 81, 92 & n.3 (2d Cir. 2019) (reaffirming the heightened standard and noting that it dates back to 2005). As suggested by their misleading invocation of a lower standard, Plaintiffs cannot satisfy the heightened one. *See* Supp. Br. § III(A)(1) at 13–14, (B)(1) at 15–18.

6

Plaintiffs also cite *Harlen* for the "general rule that whether items are similarly situated, for purposes of an equal protection claim, is a factual issue that should be submitted to the jury, unless it is clear that no reasonable jury could find the similarly situated prong met." Opp'n Br. at 23 (citing *Harlen Assocs.*, 273 F.3d 494). While that may be the "general rule," the caselaw is rife with decisions dismissing such claims on dispositive motions. *See* Supp. Br. § III(B)(1) at 18 (collecting cases).

Plaintiffs also allege that the County seeks to enforce the TUP "against Plaintiffs, but not any other Part 380 or Part 135 operator." Opp'n Br. at 24. This allegation is belied by this very motion. *See* Supp Br. § V at 22–23 (seeking a declaratory judgment that the TUP applies to all carriers).

Finally, in support of their claim the County has targeted them and treated them differently, Plaintiffs single out three "carriers": Bakers Bay, NetJets, and Wheels Up. *See* Opp'n Br. at 24.

- <u>Bakers Bay</u> is a community group, not an air carrier. *See* Supp. Br. § III(B)(1)(iv) (discussing comparators "Subgroup No. 4"). By definition, it is not selling tickets to the public. *See id.* (citing 14 C.F.R. § 212.5). Its business model is therefore completely different from Plaintiffs'. *See id.*

- <u>NetJets</u> is a fractional ownership operation. *See* Supp. Br. § III(B)(1)(vii) (discussing comparators "Subgroup No. 7"). Its limited operating authority prevents it from selling tickets to the public. *See id.* (citing 14 C.F.R. Part 91, Subpart K).

- <u>Wheels Up</u> is understood by the County to be a Part 135 air carrier operating aircraft with nine seats or fewer. *See* 56.1 ¶ 68. Plaintiffs have not directly refuted the County's understanding. *See* 56.1 ¶ 74 (Resp.) (alleging that Wheels Up "offer[s] shared seat flights on aircraft *designed* for more than 9 passenger seats" (emphasis added)).[1] But to the degree the

---

[1] *N.b.*, the County has already played whack-a-mole with another air carrier about whom Plaintiffs made a firmer allegation. *Compare* 56.1 ¶ 68 (Resp.) (alleging that "Tradewind is a Part 135 operating a Pilatus PC-12, which is designed for ten passengers, from an FBO"), *with* Supp. Br. § III(B)(1) at 16 (citing the Affidavit of Tradewind's CEO for the proposition that "'Tradewind's

7

County is incorrect and Wheels Up *is* violating the TUP—or if it does so in the future—the County has every intention of enforcing the TUP to prohibit Wheels Up and all other carriers from operating outside of the Terminal while offering single-seat sales to the general public, or any segment thereof, on aircraft with more than nine seats. *See, e.g.*, Supp. Br. § V at 22–23 (seeking a declaratory judgment that the TUP applies to all carriers).

B. *Rational-Basis Review*

Plaintiffs fault the County for "never articulat[ing] a rationale for the nine-seat limitation or the distinction between private and public." Opp'n Br. at 24. But as set forth in the Support Brief, there is no obligation to do so. *See* Supp. Br. § III(A)(2) at 14–15. Rather, courts are "required to uphold the classification 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Furthermore, and as also set forth in the Support Brief, "[t]he bases for the 2004 TUP and the 2005 Amendment are explicitly set forth in their accompanying committee reports." Supp. Br. § IV(B)(2) at 18–19 (citing Local Law No. 12-2004 at COW-851 and Local Law 17–2005 at COW-893). Plaintiffs ignore this point. Opp'n Br. at 23–25.

The Support Brief also details the federal regulatory scheme with which the County scheme harmonizes. *See* Supp. Br. § IV(B)(2) at 19–20. Because the applicable standard is whether "any reasonably conceivable state of facts could provide a rational basis," *see Sensational Smiles*, 793 F.3d at 284—if the federal regulatory scheme has a rational basis (and the County posits that it does), so too does the County's scheme. Plaintiffs do not engage with this argument. *See* Opp'n Br. at 23–25. For this additional reason, Plaintiffs' equal protection claim should be dismissed in its entirety.

---

Westchester County flights do not include more than 9 passenger seats'" (quoting Carey Decl., Ex. AB (Zipkin Affidavit) ¶¶ 7, 8)) *and* Opp'n Br. (omitting any reference to Tradewind).

IV. <u>Plaintiffs' Equitable Defenses</u>

  *A. Non-Laches Equitable Defenses*

The County has moved to dismiss each of Plaintiffs' equitable defenses. *See* Answer to Counterclaims ¶ 217; Supp. Br. § IV at 20–22. Plaintiffs oppose the County's application only as applied to laches. *See* Opp'n Br. at 21–23. By failing to respond to any of the County's arguments not involving laches, Plaintiffs have abandoned their non-laches equitable defenses. *See, e.g.*, *Marom v. Town of Greenburgh*, No. 20-CV-3486 (PMH), 2022 WL 17584279, 2022 U.S. Dist. LEXIS 223746, at *19–20 (S.D.N.Y. Dec. 12, 2022); *Constant v. Prack*, No. 16-CV-3985 (PMH), 2022 WL 917528, 2022 U.S. Dist. LEXIS 57435, at *15 (S.D.N.Y. Mar. 29, 2022).

  *B. Laches*

Plaintiffs cite a single case for the proposition that "the defense of laches can be pursued against the government, where the government seeks to enforce a right akin to a private one." Opp'n Br. at 21 (citing *Cayuga Indian Nation v. Pataki*, 413 F.3d 266, 278 (2d Cir. 2005)). In that case, the court reaffirmed its prior holding that "'laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest.'" *Cayuga Indian Nation*, 413 F.3d at 279 n.8 (quoting *United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002)). The court found that "this case does not involve the enforcement of a public right or the protection of the public interest." *Id.*

Plaintiffs do not claim that the TUP involves a private interest. *See* Opp'n Br. at 21–23. Instead, they argue that "[they] have expended millions of dollars in the development of their business over the past few years, all under the watchful eye of the County." *Id.* at 21, 23. This argument entirely ignores the central issue. *See Cayuga Indian Nation*, 2413 F.3d at 279 (allowing laches in "government suits in which the government is seeking to enforce . . . what are in the nature of private rights" but not in "government suits to enforce sovereign rights"); *see also City of New York v. FedEx Ground Package Sys.*, 314 F.R.D. 348, 357–58 (S.D.N.Y. 2016) (applying a similar standard to a local municipality). For

the reasons detailed in the Support Brief, the Court should find that the County's enforcement of its TUP is a governmental function and immune to a laches defense. *See* Supp. Br. § IV(B) at 21–22.

## CONCLUSION

For the reasons set forth above, the County respectfully requests that the Court grant its motion for summary judgment, grant its counterclaim for declaratory relief, dismiss the Complaint with prejudice, and grant such other relief as this Court deems just and proper.

DATED: White Plains, New York
November 30, 2023

**JOHN M. NONNA**
Westchester County Attorney
*Attorney for Defendant*

By _____
Sean T. Carey
Associate County Attorney, of Counsel
Michaelian Office Building
148 Martine Avenue, Room 600
White Plains, New York 10601
(914) 995-2243
stca@westchestercountyny.gov

TO: All Parties *(via CM/ECF)*