UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DELUX PUBLIC CHARTER, LLC d/b/a JSX AIR
and JETSUITEX, INC.; XO GLOBAL, LLC; and
BLADE URBAN AIR MOBILITY, INC.,

                Plaintiffs,

– against –

COUNTY OF WESTCHESTER,

                Defendant.

Case No. 22 Civ. 01930 (PMH)

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A STAY OR INJUNCTION PENDING APPEAL

**JOHN M. NONNA**
**WESTCHESTER COUNTY ATTORNEY**
*Attorney for Defendant*
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601

**Of counsel:**
Sean Carey, Associate County Attorney
Francesca Mountain, Senior Assistant County Attorney
Robert Taglia, Assistant County Attorney

**TABLE OF CONTENTS**

FACTUAL BACKGROUND ........................................................................................................ 2

STANDARD FOR AN INJUNCTION ........................................................................................ 4

ARGUMENT .................................................................................................................................. 4

    I.  PLAINTIFFS ARE UNLIKELY TO SUCCEED ON APPEAL ............................... 4

    II.  PLAINTIFFS CANNOT ESTABLISH IRREPARABLE HARM ............................ 5

        A.  Plaintiffs do not need to "stop operating" at the Airport ........................................ 6

        B.  Plaintiffs' harm is of their own making .................................................................. 7

        C.  Only part of Plaintiffs' business will be affected ................................................... 8

        D.  The constitutional claims do not establish irreparable harm ................................. 8

    III.  THE PUBLIC INTEREST FAVORS THE COUNTY ............................................. 9

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Agudath Isr. of Am. v. Cuomo*, 980 F.3d 222 (2d Cir. 2020) ........................................................4
*Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218 (2d Cir. 2008) .......................................5
*Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828 (3d Cir. 1995) ........................7
*Convergen Energy WI, LLC v. L'Anse Warden Elec. Co., LLC*, 20-cv-5240 (LJL), 2020 U.S. Dist. LEXIS 184252 (S.D.N.Y. Oct. 5, 2020) .....................................................................................................7
*Dexter 345, Inc. v. Cuomo*, 663 F.3d 59 (2d Cir. 2011) ............................................................ 5, 6
*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133 (2d Cir. 2016) *cert denied* 585 U.S. 948 (2017) ..............................................................................................5
*In re Facebook, Inc.*, 986 F. Supp. 2d 428 (S.D.N.Y. 2014) .........................................................5
*JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31 (2d Cir. 2015) ...........................................4
*Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445 (S.D.N.Y. 2010) ........................................4
*LaRouche v. Kezer*, 20 F.3d 68 (2d Cir. 1994) ............................................................................4
*Midway Airlines, Inc. v. County of Westchester*, 584 F. Supp. 436 (S.D.N.Y. 1984) .................9
*Molloy v. Metro Transp. Auth.*, 94 F.3d 808 (2d Cir. 1996) .......................................................7
*Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81 (2d Cir. 1998) .......................5
*New Pac. Overseas Group (USA) Inc. v. Excal Int'l Dev. Corp.*, 99-cv-2436 (DLC), 1999 U.S. Dist. LEXIS 6386 (S.D.N.Y. May 5, 1999) ................................................................................8
*Sam Party of N.Y. v. Kosinski*, 987 F.3d 267 (2d Cir. 2021) ......................................................9
*United Retail Inc. v. Main Street Mall Corp.*, 903 F. Supp. 12 (S.D.N.Y. 1995) ........................8
*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) ......................................... 8, 9

**Other Authorities**

FAA Ensuring Safe Public Charter Flights, Exploring Future Solutions for All Flyers, June 17, 2024, *available at* https://www.faa.gov/newsroom/faa-ensuring-safe-public-charter-flights-exploring-future-solutions-all-flyers ............................................................10
Fed. Reg. Vol. 88, No. 166, p. 59480 (Aug. 29, 2023) ..................................................................9

*Twenty years ago*, the County enacted Terminal Use Procedures ("TUPs") governing various activities at the Westchester County Airport (HPN) ("the Airport"). *Nineteen years ago*, the County clarified the meaning of certain terms in those TUPs, making it extraordinarily clear that the TUPs would apply to the activities that—a decade or more later—Plaintiffs would choose to engage in. It is unclear why Plaintiffs chose to implement a business model in violation of the TUPs. But whether it was ignorance, bad counsel, or simply hubris, Plaintiffs did so.

The County attempted to work with Plaintiffs to resolve these violations in a manner that would accommodate their business operations while adhering to the TUPs. Plaintiffs rejected those attempts, instead deciding that litigation was the better track.[1] Plaintiffs sought a preliminary injunction and the County, exercising patience, agreed not to enforce the TUPs until this Court issued a decision.[2] However, Plaintiffs were well aware—as far back as March 14, 2022—that the County would not agree to a stay of enforcement of its TUPs pending an appeal in this matter. Despite that foreknowledge, and summary judgment having been fully briefed as of November 30, 2023, Plaintiffs have continued to sell seats through (at least) March 2025.[3] Having thoroughly lost their case in this Court's July 1, 2024 decision, Plaintiffs now claim irreparable harm if the County were to enforce the TUPs due to their own continued defiance of the law.

---

[1] Having tried litigation and lost, Plaintiffs now complain the County is not going back to pre-litigation settlement offers—offers that were made to *avoid* the instant court proceeding. Plaintiffs clearly wish to have their cake and eat it too.

[2] This did not stop Plaintiffs from continuing to seek a preliminary injunction, claiming that "customers will not book flights absent a finding by this Court of Plaintiffs' likelihood of success on the merits of their claims." (ECF No. 57 at 7). This Court saw through the request for an advisory ruling and denied the injunction. (*Id.* at 8).

[3] Clearly, the irreparable harm posited by Plaintiffs in their preliminary injunction motion did not come to pass.

1

There is no basis for Plaintiffs' requested reliefs.[4] Protestations of the harm to their business model aside, Plaintiffs are acting in contravention to a valid law, that—as this Court held—was well within the County's authority to enact. Further, while enforcement might disrupt *some* of Plaintiffs' intended operations, there are multiple ways by which it can comply with the TUPs and still operate at the Airport, Plaintiffs' recalcitrance notwithstanding. Finally, Plaintiffs' manufactured constitutional claim does not tip the equities in their favor; rather, the equities are in favor of the enforcement of valid laws, regardless of Plaintiffs' preferences.

## **FACTUAL BACKGROUND**

Plaintiffs spill significant amounts of ink discussing their business model, customer satisfaction, and other puffery in order to convince this Court that their business model is completely unmalleable and will evaporate if they make any changes. This noise should not distract from the facts relevant to consideration of this motion. As this Court is familiar with the pertinent facts, they are only very briefly addressed herein.

Plaintiffs sell airplane seats on an individual basis to members of the general public. The aircrafts on which they fly are of varying sizes, with JSX flying the largest planes, which can accommodate up to 30 passengers. Under the County's TUPs, any aircraft—where seats are sold to the general public on an individualized basis—that has more than 9 seats is required to fly out the terminal, not an FBO. There is no dispute that Plaintiffs' current (and intended future) operations violate the TUPs. Instead of coming into compliance with them, Plaintiffs commenced this action, seeking to invalidate the TUPs. Plaintiffs initially sought a preliminary injunction; however, the parties ultimately agreed to a standstill agreement, where the County would not seek to enforce the TUPs

---

[4] Plaintiffs ask for a stay of the effectiveness of this Court's order, or an injunction pending appeal. Effectively, the relief sought is the same, and the standard is the same. As such, the County does not address these reliefs separately, as both should be denied for the same reason.

2

until there was a "valid court order." (ECF No. 45). Importantly, during the negotiations of that agreement, on March 14, 2022 the County specifically stated that it would *not* agree that the stipulation "remain in place through a possible appeal." (Ex. 1). Plaintiffs' counsel acknowledged that point, and the language was revised from "final valid court order" to just "valid court order," which was the standstill agreement ultimately signed by the Court. (ECF No. 45).

Following discovery, the parties moved for summary judgment. This was fully briefed, bundled, and submitted to the Court on November 30, 2023. (*See* ECF Nos. 111 to 117). On July 1, 2024, this Court found in favor of the County, dismissing all of Plaintiffs' claims. (ECF No. 120). On July 12, 2024, Plaintiffs appealed. (ECF No. 123).

On July 15, 2024, the County sent letters to Plaintiffs, demanding they come into compliance with the TUPs. (*See* Edmondson Ex. G). These letters, sent in good faith, were an attempt by the County to work with Plaintiffs so as to limit disruptions, and to allow them time to operate until the next lottery for gate slots at the terminal. In order to allow for an orderly transition, the County offered to allow Plaintiffs to operate currently scheduled flights through September 30, 2024, subject to their agreement to come into compliance. If not, the County noted that it could exercise its legal rights to enforce compliance.

Plaintiffs then sought an agreement by the County to extend those dates indefinitely, which the County rejected. (*See* Edmondson Ex. I). The County did, however, on July 19, 2024, modify the original demand, recognizing that the next scheduled lottery for gate slots was not until October, and thus offered to extend the grace period to October 31, 2024. (*See* Edmondson Ex. J). Plaintiffs have been given until July 29, 2024 to respond to those demand letters; as of the filing of this opposition, no formal response has been received from JSX or XO. Blade has stated that it has not utilized aircraft with more than 9 seats since April 30, 2023, and intends to continue to refrain from doing so. (Ex. 2). Given Blade's assertion that it intends to comply with the TUPs by not utilizing aircraft that would be

3

subject to them, its request for relief should be summarily denied, as there can be no harm if they do not intend to violate the TUPs.

## STANDARD FOR AN INJUNCTION

A party seeking the "extraordinary and drastic remedy" of injunctive relief must make a "*clear showing*" of "four elements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (emphasis in original; quotation marks and citation omitted). For an injunction pending appeal, the question of success is whether the movant is likely to prevail "on appeal." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (quotation marks and citation omitted).

## ARGUMENT

### I. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON APPEAL

Plaintiffs cannot make a clear showing that they are likely to succeed on appeal. In order to meet this threshold, Plaintiffs are required to make a "strong showing" they are likely to succeed. *Agudath Isr. of Am. v. Cuomo*, 980 F.3d 222, 226 (2d Cir. 2020).

This Court is well aware of the facts and arguments underpinning its July 1, 2024 decision. It correctly decided this matter, and Plaintiffs have pointed to nothing to support their likelihood of success argument, other than saying the Second Circuit may disagree. Importantly, contrary to Plaintiffs' reliance on *Jock v. Sterling Jewelers, Inc.* (738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010)) (*see* Pl. Mem. at 15), the question of preemption under ANCA or the ADA is not "an issue of first impression that relates to the application of a newly minted rule by a sharply divided Supreme Court." Rather, these are long-standing laws, which courts have addressed before. Indeed, the Second Circuit's decision in *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton* (841 F.3d 133 (2d Cir. 2016) *cert*

4

*denied* 585 U.S. 948 (2017)) provides an extensive discussion of both ANCA and ADA preemption. There are also a number of cases discussing ADA preemption and the proprietor exemption. *See, e.g., Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81 (2d Cir. 1998); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008). Thus, the questions posed in this case are not questions of first impression. "[T]hat established law has not been applied to a unique set of facts does not create an issue of first impression; if it did, virtually any case might qualify." *In re Facebook, Inc.*, 986 F. Supp. 2d 428, 483 (S.D.N.Y. 2014).

Plaintiffs' assertion of error with respect to the Equal Protection claim similarly deserves short shrift. This Court did not weigh credibility, as it well knows. Rather, the Court found that facts were either not sufficiently controverted in the 56.1 statement, or that Plaintiffs failed to respond to the County's arguments. (ECF No. 120 at 18, n.8). To the extent there were "disputes," this Court found there is only one possible conclusion to draw, which left Plaintiffs' attempt to identify comparators legally lacking. (*Id.* at 19-21).

Thus, and for the reasons set forth in this Court's July 1, 2024 Opinion and Order, Plaintiffs are unlikely to succeed on appeal.

## II.    PLAINTIFFS[5] CANNOT ESTABLISH IRREPARABLE HARM

Plaintiffs put forth three theories of irreparable harm. None validly support their seeking an injunction. "It is well established that an irreparable injury is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." *Dexter 345, Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011) (quotation marks and citation omitted). As a threshold matter, *Dexter 345* disposes of Plaintiffs' irreparable harm arguments. Distinguishing *Nemer Jeep-Eagle*

---

[5] Given Blade's representation that it will not sell seats on aircraft subject to the TUPs, it has no harm. As such, references to Plaintiffs with respect to irreparable harm and the public interest are to JSX and XO.

*v. Jeep-Eagle Sales Corp.* (on which Plaintiffs heavily rely), the Circuit held that, the operating history[6] of the hotels in question there:

> will enable the Plaintiffs to calculate any money damages to which they might be entitled, including lost profits, based on previous rent figures. The Appellants' argument that the loss of goodwill will be irreparable fails in light of this long history. The District Court correctly found that any loss of goodwill would result from the Appellants' inability to continue operating their budget hotel business as they had in the past. The long history of operation by both Appellants ensures that they will be able to calculate money damages for any loss of goodwill they may have suffered if a taking is found.

663 F. 3d at 63. In other words, even if the County's actions were to completely shut down Plaintiffs' businesses, and Plaintiffs were to ultimately succeed on appeal, that harm could be fixed through money damages, calculated based on the operating history that Plaintiffs extoll in the instant motion. Thus, Plaintiffs cannot establish irreparable damages. That being said, Plaintiffs' asserted irreparable harms are also insufficient.

### A. Plaintiffs do not need to "stop operating" at the Airport

Contrary to Plaintiffs' contentions, enforcement of the TUPs does not require them to cease all operations at the Airport; rather, it requires adaptation to the 20-year-old regulations they have flouted. There are multiple ways in which this can be done.

First, Plaintiffs can utilize the terminal, in accordance with the TUPs. With respect to arriving flights, Plaintiffs would be required to utilize the TSA security checkpoints at the airports they are departing from. While this would be an operational change, it is one that Plaintiffs *could* make. Indeed, many of the airports identified by Plaintiffs have TSA checkpoints, including Fort Lauderdale International Airport and Palm Beach International Airport (a/k/a West Palm Beach). (Edmondson Decl. at ¶ 47; Khurana Decl. at ¶ 29). Notably, even if some of the current airports to which they fly

---

[6] *Dexter 345* involved two properties, including one that had been in operation for 4 years at the time of the injunction request. In that decision, even 4 years was a sufficient operational history to deny injunctive relief. Here, by their own admission, JSX has been operating from the Airport for 4 years, XO even longer.

would not permit this, Plaintiffs have made changes to airports in the past, and can do so again in the future.[7] Plaintiffs complain that this will "cut at the heart of Plaintiffs' business model" (Pl. Mem. at 12), but a preferred business model should not give carte blanche to ignore the law.

Second, Plaintiffs can operate in a manner that is exempt from the TUPs. The simplest of those options would be to fly smaller planes. If a plane has nine or fewer seats, Plaintiffs are free to sell to members of the general public and to utilize the FBOs. While this may require Plaintiffs to increase the number of flights and/or the price of tickets, that is a financial decision which is ultimately compensable by monetary damages if Plaintiffs were to succeed on appeal.

Given that there are alternatives available to Plaintiffs, they have failed to meet the irreparable harm prong. "[I]rreparable harm does not exist where alternatives are available to a movant, even if 'these alternatives are less convenient.'" *Convergen Energy WI, LLC v. L'Anse Warden Elec. Co., LLC*, 20-cv-5240 (LJL), 2020 U.S. Dist. LEXIS 184252, at *13 (S.D.N.Y. Oct. 5, 2020) (quoting *Molloy v. Metro Transp. Auth.*, 94 F.3d 808, 813 (2d Cir. 1996)).

B. *Plaintiffs' harm is of their own making*

Plaintiffs also cannot establish irreparable harm, as it is all of their own making. Indeed, "a movant cannot manufacture its own exigency and '[i]f the harm complained of is self-inflicted, it does not qualify as irreparable.'" *Convergen* at *13 (quoting *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995)).

Here, much of Plaintiffs' "harm" would come from their asserted need "to cancel hundreds of flights into next year." (Pl. Mem. at 13). However, that is entirely of their own making. It was made

---

[7] For example, during the pendency of this litigation, in September 2023 JSX changed one of its airports from Miami International Airport (MIA) to Miami Opa-Locka Executive Airport (OPF). *See* https://www.aeroroutes.com/eng/230817-xesep23opf (last retrieved July 22, 2024). Given that the flights identified by JSX (*see* Edmondson Decl. at ¶ 47) and XO (*see* Khurana Decl. at ¶ 8) in the instant motion are primarily to Florida, with some to California and Colorado, there are certainly plenty of airports at those destinations with TSA checkpoints.

clear to Plaintiffs on March 14, 2022—more than two years ago—that the County would not agree to a stay pending appeal. (Ex. 1). Plaintiffs were also aware as of June 29, 2023—over a year ago—when summary judgment briefing would be completed (*see* 06/29/2023 Minute Entry). In that time, Plaintiffs appear to have made no contingency plans, and did not even contemplate the *possibility* of losing their case, instead continuing to sell seats on their flights out through March 2025.[8] As such, Plaintiffs have made their own harm, and therefore an injunction would be inappropriate.

    C. *Only part of Plaintiffs' business will be affected*

Plaintiffs do not exclusively fly between HPN and other airports. Thus, even if Plaintiffs shut down all operations at HPN, they would not be put out of business entirely. "[C]ourts have refused to find irreparable harm where only a part of the business will be affected." *New Pac. Overseas Group (USA) Inc. v. Excal Int'l Dev. Corp.*, 99-cv-2436 (DLC), 1999 U.S. Dist. LEXIS 6386, at *18 (S.D.N.Y. May 5, 1999) (citing *United Retail Inc. v. Main Street Mall Corp.*, 903 F. Supp. 12, 14 (S.D.N.Y. 1995)).

    D. *The constitutional claims do not establish irreparable harm*

Plaintiffs' last irreparable harm argument is that, because they allege a constitutional violation, they have established irreparable harm. (Pl. Mem. at 14). That is not so. The case law is patently clear that this irreparable harm *only* comes if the plaintiff has established a likelihood of success on the merits. *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) ("because they have failed to demonstrate a likelihood of success on their First Amendment or other constitutional claims, their asserted harm is not of a constitutional dimension. Thus, Plaintiffs fail to meet the irreparable harm element simply by alleging an impairment of their Free Exercise right.").

---

[8] Indeed, as of July 22, 2024, it is *still* possible to search for and purchase seats on JSX flights from HPN for March 2025, despite the County's demand that JSX come into compliance. XO has flights listed through October 2024. As such, it is clear that Plaintiffs—and in particular JSX—are compounding any purported irreparable harm, by continuing to sell seats that it may have to ultimately cancel.

8

Further, it is notable that Plaintiffs only rely on cases dealing with preliminary injunctions. (Pl. Mem. at 14). Here, there has already been a finding on the merits—thus Plaintiffs cannot rely on mere allegations alone. As such, the constitutional claims do not automatically satisfy the irreparable injury prong.

### III.  THE PUBLIC INTEREST FAVORS THE COUNTY

"When the government is a party to the suit, our inquiries into the public interest and the balance of the equities merge." *We the Patriots*, 17 F.4th at 295. Where a party is unlikely to succeed on its constitutional claims, the public interest does not tip in their favor. *Id.* at 296; *Sam Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021).

Moreover, the public interest clearly lies with the County's enforcement of the TUPs. The TUPs allow the County to exercise its proprietary rights to control ground congestion at HPN as well as passenger safety on the ground. The TUPs also permit the County to allocate space appropriately at the Airport. Indeed, these interests were among those relied upon by the District Court in the *Midway* litigation—which underpinned the eventual enactment of the TUPs—as part of the basis for denying preliminary injunctive relief in that action. *Midway Airlines, Inc. v. County of Westchester*, 584 F. Supp. 436, 440-41 (S.D.N.Y. 1984).

Furthermore, the interest of the general public weighs against Plaintiffs. As the Federal Aviation Administration ("FAA") recognizes, "these public charter operations . . . appear to be offered to the public as essentially indistinguishable from flights conducted by air carriers as supplemental or domestic operations under 14 CFR part 121." Fed. Reg. Vol. 88, No. 166, p. 59480 (Aug. 29, 2023).[9] Despite being the functional equivalent of normal commercial flights, the FAA has noted that

---

[9] Plaintiffs attempt to rely on comments the County made to the FAA during the rulemaking process to support their position. (*See* Pl. Mem. at 7). However, the County was simply sharing its experience in dealing with Plaintiffs to support the FAA's proposed change.

charterers like Plaintiffs operate "under less-rigorous safety regulations – a fact that oftentimes is not transparent to the flying public." FAA ENSURING SAFE PUBLIC CHARTER FLIGHTS, EXPLORING FUTURE SOLUTIONS FOR ALL FLYERS, June 17, 2024, *available at* https://www.faa.gov/newsroom/faa-ensuring-safe-public-charter-flights-exploring-future-solutions-all-flyers (last retrieved July 22, 2024). Even beyond the County's interests in exercising its proprietary rights, the interests of the public in safe flights weighs against allowing Plaintiffs to continue to ignore the TUPs.

Plaintiffs' arguments to the contrary can be easily dispensed with. Plaintiffs complain that they will need to cancel flights after October 31, 2024. First, this appears to only be JSX—XO does not appear to have any flights past October for sale on its website. Second, these flights are more than 3 months away—there is plenty of time for customers whose flights are cancelled to find alternative arrangements. Even if these customers[10] cannot find flights that "offer the conveniences and comforts that drew them to Plaintiffs in the first place" (Pl. Mem. at 22), they will still be able to find flights that will get them to their destinations. Of course, Plaintiffs' assertions that these individuals cannot find flights that offer the same level of convenience and comfort is directly controverted by their next assertion that these passengers would instead "otherwise charter their own individual aircraft." (Pl. Mem. at 23). Further, to the extent individuals are financially able—and willing—to charter an individual private aircraft, both the public interest and that individual's interest can be served.

Finally, Plaintiffs' arguments regarding any "delay" in enforcement are without merit. As this Court held, laches cannot apply to the County. (ECF No. 120 at 24-25). Plaintiffs' argument is merely laches with a different label, and thus should be rejected. Moreover, the County agreed to a standstill that was in effect for over two years, with the express understanding that the County would not agree

---

[10] Plaintiffs also throw around the specter of "health care workers and emergency responders" not getting to "destinations where are needed to provide their valuable services to the public" (Pl. Mem. at 22-23) without any evidentiary support. Regardless, Plaintiffs fail to explain how these individuals are so reliant on Plaintiffs' services that they cannot get to destinations where they work absent Plaintiffs' continued service.

to extend that standstill pending an appeal. Plaintiffs have been well aware since March 14, 2022 that a loss in this Court would start the enforcement process. Also without merit is the assertion that—because the County is attempting to work with Plaintiffs to have an orderly transition period—an extended injunction would cause no harm. Given Plaintiffs' behavior, including continuing to offer seats for sale since this Court's decision, the County's demand for compliance, and the pendency of this motion, it is hard to believe that Plaintiffs will simply fold up shop and cancel all their flights immediately if and when the Second Circuit affirms this Court's judgment. Rather, Plaintiffs are likely to ask for (or seek judicial intervention for) a transition period at that juncture as well, making the same arguments they press here.

## CONCLUSION

For the reasons set forth above, Plaintiffs are not entitled to an injunction. Plaintiffs were already given a two-year grace period to operate while there was no valid court order. Now that there is, they should not be rewarded with a further opportunity to violate the law and ignore this Court's well-reasoned findings. As such, the County respectfully requests that this Court deny Plaintiffs' motion in its entirety.

Dated:   White Plains, New York
         July 23, 2024

**JOHN M. NONNA,**
**WESTCHESTER COUNTY ATTORNEY**

By: _____/s/ *John M. Nonna*_____

Sean Carey, Associate County Attorney
Francesca Mountain, Senior Asst. County Attorney
Robert Taglia, Assistant County Attorney
Michaelian Office Building
148 Martine Avenue, 6th Floor
White Plains, New York 10601
Tel: (914) 995-2690